(No. 39529.—

MILLER BREWING COMPANY, *vs.* MARSHALL KORSHAK, Director of Revenue, Appellee.

*Opinion filed May 23, 1966.—Rehearing denied September 21, 1966.*

Pope, Ballard, Uriell, Kennedy, Shepard & Fowle, of Chicago, (Frank H. Uriell and Paul A. Teschner, of counsel,) for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, (RICHARD A. MICHAEL and JOHN J. O'TOOLE, Assistant Attorneys General, of counsel,) for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The plaintiff, Miller Brewing Company, a Wisconsin corporation licensed to do business in Illinois, brought this action against the Director of Revenue to enjoin him from taking any steps to assess against and collect from the plaintiff any use tax or service use tax, or penalties, with respect to certain items of tangible personal property for the period from January 1, 1961, to May 31, 1964, on the ground that such taxes would be illegal and unconstitutional. The defendant's motion to dismiss plaintiff's amended complaint was granted and plaintiff appeals. The revenue and constitutional questions are involved.

We shall consider first the allegations of the amended complaint that relate to the notice of proposed use tax assessment that was served upon the plaintiff. The plaintiff manufactures "malt beverage products" in Wisconsin and sells them directly to "independent wholesale distributors" who, in turn, sell to retailers. It does not sell any of its products directly either to retailers or to consumers. "In the ordinary course of its business plaintiff has found it advisable to promote a demand for its malt beverage products. among ultimate consumers by providing for the manufacture and fabrication of certain 'point-of-sale' advertising material (hereinafter sometimes referred to as 'POS advertising items') such as interior neon signs, clocks and other devices intended to encourage a demand for the products of Plaintiff among those who congregate at the point of ultimate sale of Plaintiff's products." The fabricators retained the items until Miller sent them a "requisition drop shipping order" directing them where to ship the items. In the period relevant here, Miller paid a total of $592,879.19 for items

shipped to Illinois wholesalers. Of this total, $83,407.99 was paid to Illinois fabricators; the bulk of the remainder was paid to fabricators located in Minnesota and Wisconsin.

The amended complaint alleged that "Plaintiff did not intend to acquire title to or property in any of said POS advertising items" except those shipped to its Wisconsin warehouse. It continued: ⁓

"14.2. Except for the Wisconsin warehouse items, none of said POS advertising items shipped to the Illinois wholesale distributors had ever been inventoried by the Plaintiff or entered upon the books of account of the Plaintiff.

"14.3. Except for the aforementioned Wisconsin warehouse items, Plaintiff was not named, either as consignor or otherwise, upon any of the bills of lading or other shipping documents which accompanied the respective shipments.

"14.4. The fabricators and suppliers delivered the POS advertising items to independent carriers, shipping charges prepaid, for delivery to the Illinois Wholesale distributors.

"14.5. As soon as the fabricators and the suppliers delivered the said POS advertising items to the respective carriers, Plaintiff became legally obligated to pay said fabricators and suppliers for the cost of fabrication of said POS advertising items and to reimburse them for freight charges which had been prepaid by them.

"14.6. The respective suppliers were named as consignors of all shipments and the several Illinois wholesale distributors were named as consignees. Risk of loss during shipment was in the consignees and all claims for damage were to be made by the consignees.

"14.7. Title to the POS advertising items passed from the suppliers to the Illinois wholesale distributors when said items were delivered to the respective carriers at the points of origin of the shipments.

"14.8. If, contrary to its intent, the Plaintiff at any time acquired any ownership, title or interest in and to any of said POS advertising items other than the Wisconsin ware-

house items, any such ownership, title or interest was relinquished by Plaintiff no later than the time when said POS advertising items were placed with carriers at the respective points of origin of the respective shipments."

The complaint further alleged that prices to the wholesalers "were not increased to cover the cost to Plaintiff of the POS advertising items;" that "Plaintiff did not direct or control any such distributors in the use or distribution of said items nor did Plaintiff pay any bonuses or any charges for the use or non-use of such items," but the wholesalers "usually distributed the POS advertising items to various Illinois retailers who would then use said items at the point-of-sale to encourage a demand for Plaintiff's malt beverage products among ultimate consumers thereof."

As we read the complaint, what the plaintiff says is that it caused the items of tangible personal property here involved to be manufactured in order to promote the sale of its product. It paid for them, directed their shipment to particular wholesalers in Illinois, and paid the freight charges. But it also says that it never became the owner of these items because it did not ever intend to take title to them, and did not inventory them or enter them upon its books of account. We think those considerations are irrelevant. The plaintiff caused the items to be brought into being, paid for their manufacture and exercised complete power of disposition over them. Even if, in some other context or for some other purpose, someone other than the plaintiff might somehow be regarded as the owner of the items in the state in which they were manufactured, the dominion exercised over them by the plaintiff is sufficient to establish the plaintiff as their owner for the realistic purposes of a taxing statute.

The only conclusion that we can reach from the allegations of the complaint is that the plaintiff was the owner of the items in question when it directed that they be shipped into Illinois in order to stimulate the sale of its product.

They were used in this state for that purpose. The complaint does not allege that these items of personal property fall within any of the statutory exceptions dealing with property brought into this state by an owner. (See Ill. Rev. Stat. 1963, chap. 120, par. 439.3.) Unless, therefore, the ownership of these items was transferred to someone else, the property was used in Illinois by the plaintiff, and the plaintiff is subject to the use tax. We turn, therefore, to the allegations of the complaint that are apparently intended to divorce the plaintiff from ownership of this property.

Paragraph 14.7 of the complaint alleges: "Title to the POS advertising items passed from the suppliers to the Illinois wholesale distributors when said items were delivered to the respective carriers at the points of origin of the shipments." This paragraph is based upon the assumption that the plaintiff never acquired any interest in or title to the items, a theory that we are unable to accept. Moreover, the allegation as to the passage of title is unmistakably a conclusion of law rather than an allegation of fact. (*Leitch* v. *Hine,* 393 Ill. 211; *Wolcott* v. *Village of Lombard,* 387 Ill. 621, 626; *Grove* v. *Templin,* 320 Ill. 597, 602.) Yet the facts as to the transactions are peculiarly within the knowledge of the plaintiff.

Paragraph 14.8 of the complaint alleges that if the plaintiff at any time acquired any ownership, title or interest in and to any of the items, and we have held that it did, "any such ownership, title or interest was relinquished by the plaintiff * * *." Here, again, the complaint studiously fails to allege facts.

In the context of this statute, we are unaware of the meaning of an allegation that title, interest or possession has been "relinquished." The complaint nowhere alleges that the items were sold to the Illinois wholesale distributors or to anyone else. The allegation that the plaintiff did not increase prices to its wholesalers to cover these items seems designed to negative a sale, and in the trial court the plain-

tiff did not argue that a sale had taken place. Similarly, there is no allegation that the items were given by the plaintiff to the Illinois wholesalers or to anyone else. The original complaint alleged that these items "are furnished gratuitously to the several independent distributors of Plaintiff." During the argument before the trial court the plaintiff refused to concede that there had been a gift, and in its amended complaint, filed after that argument, the allegation that the items were "furnished gratuitously" was omitted.

The complaint has been carefully drafted to avoid a plain and a simple statement of the actual transactions between the plaintiff and the wholesale distributors. Whether this was done in order to avoid taking a position that might result in the imposition of a tax upon its wholesale or retail distributors, we do not know. Like the circuit court, we must determine the legal sufficiency of the amended complaint that the plaintiff has chosen to file, and in our opinion the circuit court properly held that it failed to establish the illegality of the use tax proposed to be assessed against the plaintiff.

In its briefs in this court the plaintiff has argued extensively numerous questions under the due process and commerce clauses of the Federal constitution. But the amended complaint that it filed does not assert facts that would call into operation the constitutional doctrines that it advances.

With respect to the proposed assessment under the service use tax, the amended complaint alleged that "Plaintiff has determined that the demand for its products will be increased if the various retailers of said products display, outside of their several places of business, signs which disclose that the individual retailer is engaged in the sale of Plaintiff's products." The signs were shipped to plaintiff's wholesale distributors and were installed at "the several places of business of those Illinois retailers who sell the malt

beverages produced by Plaintiff to ultimate consumers thereof."

The amended complaint continued: "Plaintiff did not lease said signs either to the wholesalers or retailers who used them, and Plaintiff did not receive rent or other payments either from the distributors or from the retailers for the use of said signs. While it is possible that, with respect to an insignificantly small number of such signs, Plaintiff might have exercised a right or power over such signs during the period involved, as a general proposition Plaintiff merely retained ownership of said signs while they were located within the State of Illinois and did not exercise any rights or powers over such signs incident to that ownership during the period involved."

Plaintiff contends that the signs which it concededly owns in Illinois are not subject to the Service Use Tax Act. That act imposes a tax on "the privilege of using in this State real or tangible personal property acquired as an incident to the purchase of a service from a serviceman." Apparently the individualized character of these signs accounted for their assessment under the service use tax. In any event, the plaintiff does not contend that it did not purchase service from a serviceman. Its contention is rather that it does not, in the language of the act, exercise "any right or power over tangible personal property incident to the ownership of that property." To tax its signs under the Service Use Tax Act would, plaintiff contends, equate "the Service Use Tax with a property tax, assessable merely because of ownership."

The fact remains, however, that the plaintiff used these signs in Illinois, for its benefit, in the natural way in which signs are used, by causing them to be put up where people could look at them. The power to allow property one owns to be used for one's benefit in this manner is the "exercise" of "an incident of ownership" under the act. The contention

that the tax is a "double tax" is clearly without merit.

Finally, it is the plaintiff's position that regardless of its liability for the principal amounts of the taxes assessed against it, the 25% penalties imposed for failure to file returns should not be sustained. It argues first that the penalties are not authorized by the taxing statutes, and second, that if the statutes authorize the penalties, they are invalid under the due-process clauses of the State and Federal constitutions. Section 12 of the Use Tax Act, and section 12 of the Service Use Tax Act, each provide that certain designated sections of the Retailers' Occupation Tax Act "which are not inconsistent with this Act, shall apply, as far as practicable, to the subject matter of this Act to the same extent as if such provisions were included herein." (Ill. Rev. Stat. 1963, chap. 120, pars. 439.12; 439.42.) Section 5 is one of the sections of the Retailers' Occupation Tax Act thus incorporated by reference. One of the main purposes of that section is to provide for penalties in certain cases, including a 25% penalty for failure to file a return, (Ill. Rev. Stat. 1963, chap. 120, par. 444.) and we think it is clear that this penalty provision is applicable to the use tax and the service use tax. *Cf. Turner* v. *Wright,* 11 Ill.2d 161.

In our opinion the penalty provisions do not deprive the plaintiff of its constitutional rights. As is true of many other taxes, the information from which the amount of these taxes must be computed is peculiarly within the knowledge of the taxpayer. In *Helvering* v. *Mitchell,* 303 U.S. 391, 82 L. Ed. 917, the validity of sanctions designed to ensure full and honest disclosure was sustained, and their civil rather than criminal character was recognized. The imposition of a 25% penalty for failure to file a return has been approved in many cases. (*Offutt* v. *Commissioner,* (4th cir. 1960) 276 F.2d 471; *Henningsen* v. *Commissioner,* (4th cir. 1957) 243 F.2d 954; *McAlpine Land & Development Co.* v. *Commissioner,* (4th cir. 1942) 126 F.2d 163; *Noteman* v. *Welch,*

(1st cir. 1939) 108 F.2d 206.) Other than its asserted belief that it was not liable to pay the taxes, the plaintiff has shown no reason to justify its failure to file a return; similar assertions ·have been held ineffective to avoid a penalty for failure to file a return. See, *e.g. Heman* v. *Commissioner,* (8th cir. 1960) 283 F.2d 227, 233.

For the reasons stated, the judgment of the circuit court is affirmed.

*Judgment affirmed.*