727 P.2d 1147

**K MART CORPORATION,
Plaintiff-Respondent,**

v.

**IDAHO STATE TAX COMMISSION,
Defendant-Appellant.**

**No. 16234.**

Supreme Court of Idaho.

Sept. 18, 1986.

Rehearing Denied Nov. 7, 1986.

Jim Jones, Atty. Gen. and Theodore V. Spangler, Deputy Atty. Gen., State of Idaho, Boise, for defendant-appellant.

Joseph Henry Uberauga II, Boise, for plaintiff-respondent.

HUNTLEY, Justice.

In this case we determine whether an advertiser, which has its advertising supplements printed out-of-state and which then pays a newspaper to insert and deliver the supplements with the newspaper, is

subject to payment of use tax on the cost of the purchase of the supplements from the printer.

K Mart Corporation creates "mats" from which an out-of-state printer prints newspaper advertising inserts. The printer ships the inserts to newspapers selected by K Mart. Through contracts with these newspapers K Mart designates the number of inserts to be distributed at any given time as well as the date of distribution.

Once the newspapers receive the inserts they exercise exclusive possession over the supplements and determine the precise method of their distribution. If an insert is missing from a given newspaper, the paper must provide an insert to any complaining customer.

The Idaho State Tax Commission determined K Mart owed use tax on the inserts. The Idaho Board of Tax Appeals affirmed. On appeal to district court the parties cross motioned for summary judgment. The district court held the advertising inserts fell within the use tax statute but were nevertheless not taxable for two reasons: First, the inserts were a component part of the newspaper, bringing it within the production exemption of I.C. § 63–3622(d), and second, the sales tax regulation interpreting the applicable statutes violated equal protection. The Idaho State Tax Commission (commission) appeals.

The first issue we decide is whether the inserts are subject to the use tax statute. If we rule the inserts fall within the statute, K Mart nevertheless argues the sales tax regulation interpreting the statute violates equal protection. The regulation taxes inserts printed by printers other than newspapers while exempting from sales and use tax inserts printed by the distributing newspaper. In the alternative, K Mart argues the inserts fall within the production exemption to the use tax.

To begin our determination of whether the inserts fall within the use tax, as asserted by the commission, we look to the applicable statutes:

**63–3621. Imposition and rate of the use tax.—** An excise tax is hereby im-

posed on the storage, use, or other consumption in this state of tangible personal property acquired on or after July 1, 1965, for storage, use, or other consumption in this state at the rate of three per centum (3%) of the value of the property, and a recent sales price shall be presumptive evidence of the value of the property.

(a) Every person storing, using, or otherwise consuming, in this state, tangible personal property is liable for the tax. I.C. § 63–3621 (1974–77).

The term "use" is defined in I.C. § 63–3615(b) as follows:

**63–3615. Storage—Use.**

. . . .

(b) The term "use" includes the exercise of any right or power over tangible personal property incident to the ownership or the leasing of that property. . . . I.C. § 63–3615(b) (1974–77).

Idaho's use tax scheme taxes tangible personal property purchased outside the state that would not otherwise be subject to a sales or use tax in Idaho or any other state. *See* I.C. §§ 63–3621(c) and 63–3615(c). *See, e.g., McConville v. State Board of Equalization,* 85 Cal.App.3d 156, 159, 149 Cal.Rptr. 194, 196 (1978); *Avco Manufacturing Corp. v. Connelly,* 145 Conn. 161, 140 A.2d 479, 484 (1958); *Southwestern Bell Tel. Co. v. State Com. of Revenue and Taxation,* 168 Kan. 227, 212 P.2d 363, 365–66 (1949). Use taxes discourage Idaho purchasers from avoiding Idaho sales taxes by purchasing property in states with lower or no sales tax. The "mats" prepared by K Mart from which the out-of-state printer prints the inserts are subject to sales tax in Michigan, the state of printing. However, Michigan does not subject the inserts themselves to a sales or use tax.

Under the applicable statutes, and in the absence of an exemption, K Mart is subject to use tax on the inserts if it "exercises any right or power over [the inserts] incident to the ownership . . . of that property." I.C. § 63–3615(b). K Mart purchases the in-

serts from an out-of-state printer. K Mart therefore owns the inserts until it gives away the inserts to newspaper purchasers, even though it never takes possession of the inserts. Incident to and evidencing that ownership, K Mart contracts with the printer to have the inserts delivered to various Idaho newspapers. Under additional contracts, K Mart obligates the newspapers to include a specified number of the inserts in the newspapers on certain dates.

The newspaper publishers collate the inserts by the same method as the comics, T.V. magazines, and Sunday supplements. The publishers also retain control over the manner of distribution of their newspapers.

■ K Mart argues that only the consumers receiving the inserts "use" them and that K Mart does not. K Mart apparently argues the purpose of the inserts is to provide potential purchasers with news of goods available and on sale. But all advertising is used by advertisers, such as K Mart, for the purpose of making sales and profits. In light of this and the exercise by K Mart, through its contracts, of rights and powers over the inserts incident to their ownership, K Mart uses the inserts within the meaning of the use tax statute. *K Mart Corp. v. South Dakota Dept. of Revenue*, 345 N.W.2d 55, 58 (S.D.1984); *Miller Brewing Co. v. Korshak*, 35 Ill.2d 86, 219 N.E.2d 494, 498 (1966); appeal dismissed in *Miller Brewing Co. v. Jones*, 386 U.S. 684, 87 S.Ct. 1325, 18 L.Ed.2d 405 (1967); rehearing denied in *Miller Brewing Co. v. Jones*, 387 U.S. 938, 87 S.Ct. 2048, 18 L.Ed.2d 1006 (1967); and rehearing denied in *Miller Brewing Co. v. Jones*, 389 U.S. 946, 88 S.Ct. 281, 19 L.Ed.2d 303 (1967). Consequently, K Mart must pay use taxes on the inserts unless the inserts fall within a statutory exemption.

■ K Mart argues the inserts fall within the production exemption of I.C. § 63–3622(d) (1974–77), which reads in part:

63–3622. **Exemptions.**—There are exempted from the taxes imposed by this act the following:

. . . .

(d) Receipts from the sale, storage, use or other consumption in this state of tangible personal property which will enter into and become an ingredient or component part of tangible personal property *manufactured,* processed, mined, produced or fabricated for ultimate sale at retail within or without this state, *and* tangible personal property primarily and directly used or consumed in or during such manufacturing, processing, mining, farming, or fabricating operations by a business or segment of a business which is *primarily devoted to such operation* or operations, provided that the use or consumption of such tangible personal property is necessary or essential to the performance of such operation. . . . [Emphasis added.]

This statute exempts two types of tangible personal property: the property that becomes a component part of property sold at retail and property used or consumed in the production of property sold at retail. Further restricting each of these two clauses is the limitation of the exemption to a "business or segment of a business which is primarily devoted to such operation or operations" as "manufacturing, processing, mining, farming, or fabricating." I.C. § 63–3622(d). This limitation modifies both the component part and consumption exemptions of the statute. If the legislature had intended to limit only the consumption exemption, the legislature would have used the disjunctive "or" rather than the conjunctive "and" between the two exemption clauses. The district court erred in finding the inserts exempt as component parts of the newspaper, without having first determined the operation to which K Mart is primarily devoted. Since K Mart is primarily devoted to retailing and not to "manufacturing, processing, mining, farming, or fabricating" (that is, K Mart is not a producer of inserts for resale), the production exemption does not apply to K Mart. K Mart must, therefore, pay use taxes on its advertising inserts.

The district court also held K Mart not liable for use tax on a second ground. The

court said IDAPA 35.02.13, 15–A[1] (now IDAPA 35.02.13, 15(c)) violates the equal protection clause of the fourteenth amendment to the federal constitution. This administrative regulation declares sales of inserts from printers to advertisers as taxable, while exempting inserts printed by the newspaper which ultimately distributes the inserts. Concluding this classification violated equal protection, the district court held K Mart not liable for use taxes.

While the sales tax regulations may make questionable distinctions regarding the tax consequences to advertisers using newspapers rather than third party printers, the statutory scheme makes no such distinction. Under that scheme, K Mart owes use tax on the inserts. I.C. §§ 63–3621, 63–3615(b). If a taxpayer owes tax under a statutory scheme that is constitutional, assessment of the tax pursuant to a regulation that does not comport with the constitution or with the statutory scheme does not defeat the taxpayer's statutory liability. The tax statutes are fully enforceable even if no tax regulation interpreting them exists. Statutes control interpretive regulations. To the extent a regulation is unconstitutional, it is inconsistent with the constitutional statute it purports to interpret and is, therefore, of no effect to the extent of such inconsistency. *C.f. Application of State Board of Medical Examiners*, 201 Okl. 365, 206 P.2d 211, 214–15 (1949) (a regulation is ineffective to the extent it is inconsistent with the statute it purports to interpret.) Even if the tax regulation is unconstitutional, or simply inconsistent with the statute, as it appears to

be, K Mart remains liable under the statutory scheme. The constitutional integrity of the applicable statutes has not been attacked.

Reversed. Costs to appellant. No attorney fees awarded.

DONALDSON, C.J., and BISTLINE, J., concur.

BAKES, Justice, dissenting:

The preliminary question in this case is whether the trial court properly decided the cross motions for summary judgment. The general rule governing the granting of summary judgment motions is that the "non-movant for summary judgment is entitled to have the facts and all reasonable inferences flowing therefrom construed most favorably to the non-movant." *Deal v. Cockrell*, 111 Idaho 127, 721 P.2d 726 (1986). But, "where the evidentiary facts are not disputed and the trial court rather than a jury will be the trier of fact, summary judgment is appropriate, despite the possibility of conflicting inferences because the court alone will be responsible for resolving the conflict between those inferences." *Riverside Development Co. v. Ritchie*, 103 Idaho 515, 519, 650 P.2d 657, 661 (1982). *See Old West Realty v. Idaho State Tax Comm'n*, 110 Idaho 546, 716 P.2d 1318 (1986); *Kromrei v. AID Insurance Co.*, 110 Idaho 549, 716 P.2d 1321 (1986).

Under the facts of this case, the latter rule controls. Cross motions for summary judgment were filed by both parties. The trial court, sitting as the trier of fact,

1. C. *Advertising Stuffers.* The sale of "advertising stuffers" (i.e., printed advertising separate from but distributed concurrently with a newspaper) by the printer to the advertiser constitutes a retail sale of tangible personal property. The advertiser is the consumer of the printed advertising. The purchase by him, therefore, is taxable. A newspaper, however, is purchased at retail by the reader. If the newspaper publisher sells advertising in his own newspaper, no taxable sale has occurred between the newspaper and the advertiser. Likewise, *if the publisher prints an advertising stuffer to be distributed concurrently with the publisher's own newspaper, no taxable sale has occurred.* To the extent

that a newspaper publisher prints advertising supplements which are not to be distributed as part of his newspaper, he is a contract printer and a retailer of the printing. A sales tax must be collected on the sales price charged to the advertiser.

When the advertising stuffer is printed out of the state and shipped into Idaho for use and distribution, then a taxable use has occurred. Again, the consumer of these advertising supplements is the advertiser. A use tax must be paid by the advertiser and should be reported in the appropriate space on his sales tax return. [Emphasis added.]

found no dispute as to evidentiary facts, and therefore no dispute of material fact. The trial court, based upon the affidavits submitted, is entitled to draw whatever inferences it may, even if there are conflicting inferences, for it can and will resolve the conflicts. There are sufficient facts from which inferences could be made which support the trial court's decision, and accordingly this summary judgment should not be disturbed on appeal. *Argyle v. Slemaker*, 107 Idaho 668, 691 P.2d 1283 (Ct. App.1984).

The majority opinion found, as did the trial court, that the K-Mart inserts fell within the use tax provision of I.C. § 63–3621, and within the use definition in I.C. § 63–3615. The statute requires that a party fall within the use tax before a court can consider the exemptions contained in I.C. § 63–3622.

Based upon these principles, the trial court's decision finding the K-Mart advertising inserts a component part of the newspaper should be affirmed. The majority accurately states the issue and, for purposes of this dissent, it will be restated. In this case we determine whether an advertiser, which has its advertising supplements printed out of state and which then pays the newspaper to insert and deliver the supplements with the newspaper, is subject to payment of a use tax on the cost of the purchase of the supplements from the out-of-state printer. The controlling statutory provision is contained in I.C. § 63–3622(d), which reads:

"63–3622. **Exemptions.**—There are exempted from the taxes imposed by this act the following:

. . . .

"(d) Receipts from the sale, storage, use or other consumption in this state of tangible personal property which will enter into and become an ingredient or component part of tangible personal property manufactured, processed, mined, produced or fabricated for ultimate sale at retail within or without this state, and tangible personal property primarily and directly used or consumed in

or during such manufacturing, processing, mining, farming, or fabricating operations by a business or segment of a business which is primarily devoted to such operation or operations, provided that the use or consumption of such tangible personal property is necessary or essential to the performance of such operation."

This section is divisible into three parts which define the parameters of the use tax exemption. The first portion of the exemption relates to

"receipts [received] from the sale, storage, use or other consumption in this state of tangible personal property which will enter into and become an ingredient or component part of tangible personal property manufactured, processed, mined, produced or fabricated for ultimate sale at retail within or without this state."

The second portion of the exemption relates to

"tangible personal property primarily and directly used or consumed in or during such manufacturing, processing, mining, farming or fabricating operation by a business or a segment of a business which is primarily devoted to such operation or operations."

The third portion of the exemption limits the scope of the second exemption to "the use or consumption of such tangible personal property [which] is necessary or central to the performance of such operation."

The first portion, set out above, exempts those parts of tangible personal property which enter into and become an ingredient or component part of other tangible personal property which is manufactured, processed, produced or fabricated for ultimate sale at retail. The trial court concluded that the K-Mart advertising inserts fell within this first portion of the statutory exemption as a component part of the newspaper. The trial court found the following facts: K-Mart purchased the inserts from an out-of-state supplier and exercises exclusive control over the inserts until delivery to the newspaper company; K-Mart

controls the date and size of the advertising distribution; once delivery is made to the newspaper companies, K-Mart relinquishes control of the inserts. The "advertising supplements are distributed with the newspapers." The trial court further found that "the advertising supplements are collated by the newspapers in the same fashion as are comic, TV magazine, and Sunday supplements"; that the various newspaper companies "consider [the advertising supplements as] component parts of their paper." "The supplements are retained in the [newspaper company's] permanent records." The trial court found that "subscribers are entitled to receive the advertising supplement and the newspaper [company] will ensure delivery if it is not supplied to a particular subscriber." The trial court found that, "Advertising is one part of a newspaper. It is no less a part of a newspaper if it is folded into the paper as a separate section than if it is found in the sports pages ... or if it appears underneath news articles in the body of the newspaper." As the trial court emphasized, "The advertising supplement to a newspaper has no character of its own apart from the newspaper, [and it] is not intended for sale separate from the newspaper, and is incorporated into the newspaper as a component part of it from the time it is printed." Thus, the trial court, acting as the trier of fact, is justified and is supported by sufficient evidence in the record from which inferences could be drawn indicating that the advertising supplements supplied by K-Mart, and as viewed by others in the newspaper industry, are a component part of the newspaper. That finding clearly falls within the statutory exemption as a component part.

K-Mart supplies advertising inserts, tangible personal property, to various newspaper publishers within the State of Idaho. The inserts enter into and become a component part of a newspaper edition. The newspaper, which is tangible personal property, is then sold to the ultimate retail consumer, the subscriber, who pays a sales tax on the sales price. The trial court's finding that K-Mart fell within the exemp-

tion contained in the first portion of the statute is not "clearly erroneous" and should be affirmed. I.R.C.P. 52(a); *Argyle v. Slemaker, supra; Rasmussen v. Martin,* 104 Idaho 401, 659 P.2d 155 (Ct.App. 1983); *Rueth v. State,* 103 Idaho 74, 644 P.2d 1333 (1982); *Jensen v. Bledsoe,* 100 Idaho 84, 593 P.2d 988 (1979). The creation of a newspaper is a process, *i.e.,* the taking of many parts and joining them together into a whole. Thus, the opinion of the trial court based upon the component exemption portion of the statute should be affirmed.

The majority is correct in stating that the statute exempts two types of tangible personal property, the property that becomes a component part of property sold at retail and property used or consumed in the production of property sold at retail. *See ante* at 721, 727 P.2d at 1149. The second portion of the exemption refers to that type of tangible personal property which is used or consumed in or during such manufacturing, processing, mining, farming or fabricating operations. This exemption would only be applicable if the tax sought to be imposed concerned the ink or the paper purchased by the newspaper company and used in the production of the newspaper; since it is not, the second portion is not applicable in this case. The majority states that the third part, the restriction, is applicable to both exemptions. A basic reading of the statute shows that to be incorrect. The restriction is only applicable to the second portion of the exemption. By reading the exemption section as a whole, it is apparent that the restriction applies only to tangible personal property primarily and directly used or consumed in or during such manufacturing. It is not applicable to the first portion of the exemption.

I would affirm the trial court's decision that K-Mart falls within the exemption from the payment of the use tax.

SHEPARD, J., concurs.