DRACKETT PRODUCTS COMPANY, APPELLANT, *v.* LIMBACH, TAX COMMR.,
APPELLEE.

[Cite as Drackett Products Co. *v.* Limbach (1988), 38 Ohio St. 3d 204.]

(No. 87-787—Submitted May 16, 1988—Decided August 24, 1988.)

*Frost & Jacobs* and *Larry H. McMillin,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, *Martha Jane Cooper* and *James C. Sauer,* for appellee.

*Per Curiam.* The question

presented is whether directing a publisher to publish advertising to be inserted into Ohio newspapers in concert with other advertisers is a taxable use of tangible personal property for an advertiser under R.C. 5741.02(A) and 5741.01(C).

R.C. 5741.02(A) provides:

"* * * [A]n excise tax is hereby levied on the storage, use, or other consumption in this state of tangible personal property * * *."

R.C. 5741.01(C) provides:

" 'Use' means and includes the exercise of any right or power incidental to the ownership of the thing used."

Appellant argues that it simply purchased advertising space in a publication, as did other advertisers. It argues that it did not obtain physical possession of tangible personal property in Ohio. The use tax, contrary to appellant's argument, is not imposed upon the transfer of possession of tangible personal property. It is imposed upon the storage, use, or consumption of tangible personal property in Ohio.

In *Giant Tiger Drugs* v. *Kosydar* (1975), 43 Ohio St. 2d 103, 72 O.O. 2d 58, 330 N.E. 2d 917, this court held that the use of newspaper advertising supplements by retailers to promote their businesses was subject to taxation.[1]

In the instant case, the supplements were prepared by a publishing company totally independent from the newspaper company and without any contract to publish the supplement for the newspaper. The newspaper was merely paid to distribute the supplements. The supplements appeared on the order of the advertisers. The supplements were not inserted into the newspaper as a regular feature to capture an audience but were inserted to take advantage of the newspaper's distribution capabilities. They were inserted because appellant, along with other advertisers, paid to have this done. As in *Giant Tiger Drugs, supra,* this was a taxable use.[2]

Our analysis, though, does not stop here. Since appellant acted in concert with other advertisers, we must also

---

[1] Appellants in *Giant Tiger Drugs* had argued that the advertising supplements, purchased for distribution in newspapers, were excepted under R.C. 5739.01(P) (and 5741.02[C][2]) as purchases that were used directly in making retail sales. This court rejected this argument.

Later amendment of division (P), though, permitted exception for the distribution of printed matter displaying or describing and pricing the item offered for sale, such as the supplements in *Giant Tiger Drugs.*

In the instant case, the advertising materials do not display or describe and price the item offered for sale, and appellant here does not argue that its advertising supplements qualify under division (P) (now renumbered "O"). The advertising only depicts the product and contains a cents-off coupon. Thus, division (O) does not apply here.

[2] A survey of court decisions from other states discloses that there are conflicting views concerning the taxability of advertising supplements. The two leading cases are *Sears, Roebuck & Co.* v. *State Tax Comm.* (1976), 370 Mass. 127, 345 N.E. 2d 893, and *Caldor, Inc.* v. *Heffernan* (1981), 183 Conn. 566, 440 A. 2d 767. In *Sears, Roebuck & Co.,* the court held that the supplements were part of the newspaper and exempt from the tax under the relevant Massachusetts statute. In *Caldor, Inc.,* the court rejected the *Sears, Roebuck & Co.* analysis and found that the supplements were not a part of the newspaper and that the purchase by the retailer was a taxable sale. The later cases of *Wisconsin Dept. of Revenue* v. *J.C. Penney Co.* (1982), 108 Wis. 2d 662, 323 N.W. 2d 168; *K Mart Corp.* v. *South Dakota Dept. of Revenue* (S.D. 1984), 345 N.W. 2d 55; *Sears, Roebuck & Co.* v. *Woods* (Tenn. 1986), 708 S.W. 2d 374; and *K Mart*

consider whether this combination with other advertisers had any effect on its use of the supplements.

In *Penton Publishing Co.* v. *Kosydar* (1976), 45 Ohio St. 2d 16, 74 O.O. 2d 43, 340 N.E. 2d 396, this court reviewed an operation in which the publishing company printed and distributed a variety of business-oriented magazines. The magazines were distributed by the controlled circulation method. Advertisers in the magazine paid the production and distribution costs for the magazines when they purchased advertising in them, and the magazines were distributed to recipients who were carefully selected by Penton. Advertising costs were based, in part, on the number of readers that Penton guaranteed would receive the magazines. The issue in that case was whether a "sale" had been made to the magazine's recipient so that Penton's production equipment purchases could be excepted from the sales tax under R.C. 5739.01(E)(2). In the syllabus, the court held that " '[c]onsideration' * * * includes the price paid by a party other than the consumer."

This court ruled that the advertisers purchased the magazines when the advertisers paid to have their ads printed within the format of the magazine and distributed to a particular group of readers. The court held that Penton was making sales of the magazines.

The same logic prevails in the instant case. Appellant, along with the other advertisers, purchased the advertising supplements from the out-of-state publishing companies for distribution to the newspapers' customers when appellant and the other advertisers paid the consideration to publish and distribute the supplements. The supplements were published and then distributed within Ohio at the direction of appellant and the other advertisers. Appellant selected the content of its ad, the newspaper in which it was placed, and the date on which the ad was delivered. It was charged only for its portion of the supplement. Appellant exercised sufficient rights or powers incidental to ownership to subject its purchase of a portion of the supplement to the use tax. Thus, a use of tangible personal property occurs, under R.C. 5741.02(A) and 5741.01(C), when several advertisers, in concert, pay the costs for producing and distributing a publication that advertises their products.

Since the BTA's decision is neither unreasonable nor unlawful it is, hereby, affirmed.

*Decision affirmed.*

SWEENEY, LOCHER, DOUGLAS and H. BROWN, JJ., concur.

MOYER, C.J., HOLMES and WRIGHT, JJ., dissent.

WRIGHT, J., dissenting. R.C. 5741.02(A) taxes "the storage, use, or other consumption * * * of *tangible personal property* * * *." (Emphasis added.) Since I do not believe advertising space in a publication constitutes tangible personal property, I respectfully dissent.

The Revised Code does not provide a definition of the phrase "tangible

---

*Corp.* v. *Idaho State Tax Comm.* (1986), 111 Idaho 719, 727 P. 2d 1147, held that the retailers used the supplements in a taxable manner when they directed the publishing company to print the supplements, ordered them to be delivered to selected newspapers for distribution, or chose the distribution date. See, also, *Federated Dept. Stores, Inc., Gold Circle Div.* v. *Lindley* (June 5, 1979), BTA No. 78-C-434.

personal property."[3] Therefore, the common usage of the expression applies. Black's Law Dictionary (5 Ed. 1979) defines "tangible personal property" as "[p]roperty such as a chair or watch which may be touched or felt in contrast to a contract." *Id.* at 1306. In my view, advertising space does not fall into the same category as a chair or watch. Indeed, I suggest it falls into the separate category of intellectual or intangible property. Under Ohio Adm. Code 5703-9-41, the purchase of advertising space is not a sale of tangible personal property. Therefore, the use of advertising space should not be taxed under R.C. 5741.02(A) and 5741.02(C)(2).

I fear that the majority opinion may be construed in the future to mean that all advertising space, including that used by local television and radio stations, is taxable as tangible personal property in Ohio. Such is contrary to logic and clearly not what the General Assembly intended.

Accordingly, I would hold that a payment for the reprinting of advertising to appear as a portion of a printed publication is nothing more than an intangible right where the advertiser does not acquire either legal title to or physical possession of the entire publication. The intangible right to use advertising media space clearly does not constitute tangible personal property subject to use tax under R.C. 5741.02(A). Therein lies my disagreement with the majority opinion.

MOYER, C.J., and HOLMES, J., concur in the foregoing dissenting opinion.

---

[3] Although the Revised Code does not define the phrase "tangible personal property," R.C. 5701.03 defines "personal property" as:

"[E]very tangible thing which is the subject of ownership, whether animate or inanimate, other than patterns, jigs, dies, or drawings, which are held for use and not for sale in the ordinary course of business, money, and motor vehicles registered by the owner thereof, and not forming part of a parcel of real property, as defined in section 5701.02 of the Revised Code; also every share, portion, right, or interest, either legal or equitable, in and to every ship, vessel, or boat, used or designed to be used in business either exclusively or partially in navigating any of the waters within or bordering on this state, whether such ship, vessel, or boat is within the jurisdiction of this state or elsewhere. * * *"