CRABTREE, J.T.C.
Plaintiff seeks review of defendant’s determination of plaintiff’s liability for use tax in the amount of $9,787.32 for the fiscal periods beginning October 1, 1986 and ending September 30, 1989. The tax pertains to plaintiff's retail purchase of catalogs from out-of-state vendors that were shipped directly by those vendors to plaintiff’s customers and prospective customers in New Jersey.
The case has been submitted under a stipulation of facts pursuant to R. 8:8—1(b).
The sole issue is whether plaintiff is liable for use tax on the retail cost of direct-mail catalogs distributed by out-of-state vendors to points in New Jersey.
Plaintiff is a New Jersey corporation which sells health aids, women’s apparel and assorted health-related household items. Its business is operated exclusively from its corporate headquarters and office/warehouse complex in Maywood, New Jersey.
During the relevant tax periods plaintiff's revenues were derived primarily from retail direct mail sales, which were solicited through the dissemination of direct mail advertising catalogs. The catalogs contained photographs and retail prices of plaintiff’s available inventory. The majority of the catalogs was mailed, without charge, directly to plaintiff’s customers and potential customers whose names and addresses were included on plaintiff's mailing lists.
The catalogs were produced in accordance with plaintiff’s design specifications during the taxable periods at issue by two printing firms, Foote & Davies, Incorporated, located in Atlan *573 ta, Georgia, and Alden Press, located in Elk Grove Village, Illinois. Plaintiff also contracted with four out-of-state vendors for the purchase of photographs and mechanicals which plaintiff supplied to the printing firms for their use in the production of the catalogs. The printing firms were required to submit film proofs for plaintiffs review and approval prior to final printing of the catalogs. The final catalog proofs were then submitted to plaintiffs representatives in New Jersey for review and approval prior to mass production.
Plaintiff provided the printing firms with mailing lists, which included the names and mailing addresses of customers and potential customers residing in New Jersey. The printing firms printed ink-jet mailing addresses on mailing labels and affixed the labels on the catalogs. Mailing instructions were also preprinted on the catalogs directing alternate delivery to the current occupant residing at the designated mailing address. Plaintiffs Maywood, New Jersey location was shown on the catalogs as the address to which undeliverable catalogs were to be returned.
The printing firms then by postal route sorted, bundled, bagged and mailed the catalogs. The printers then delivered the catalogs to the United States Postal Service for mailing at the third class bulk mail rate.
Uncirculated catalogs were sent to plaintiffs New Jersey office/warehouse. Plaintiff used uncirculated catalogs as advertising samples and “bouncebacks.” Sample catalogs were sent to potential vendors and customer list renters. “Bounce-backs” are catalogs which plaintiff packed and shipped along with customer merchandise orders filled at its New Jersey warehouse.
Plaintiff paid all costs incurred for photographing its available inventory and designing, printing, addressing and mailing the catalogs. Plaintiff paid no sales taxes on the amounts charged by its vendors to produce, address and mail the catalogs.
*574 The proportion of plaintiff’s catalog purchases attributable to catalogs disseminated in New Jersey was calculated by computing a ratio of plaintiff’s New Jersey sales to total sales occurring during a designated sample period. This ratio was multiplied by the aggregate amount of plaintiff’s 1988 catalog purchases that defendant contends are subject to use tax ($2,360,-989). The product calculated therefrom ($54,374) was projected throughout the entire audit period to calculate plaintiff’s New Jersey taxable purchases of $163,122 ($54,374 X 3 = $163,122). The resulting use tax of $9,787.32 was calculated by applying the six percent (6%) tax rate in effect during the relevant period to the allocated tax base of $163,122.
Plaintiff contends that it never exercised any right or power over the catalogs within New Jersey because the catalogs were prepared for mailing by out-of-state printing firms and then deposited with an out-of-state postal service office which ultimately delivered the catalogs directly to New Jersey addressees. Plaintiff also argues that, if the New Jersey use tax is found applicable to the catalogs mailed to New Jersey addresses, the use tax violates the Commerce Clause of the United States Constitution.
N.J.S.A. 54:32B-3(a) imposes a sales tax on receipts from every retail sale of tangible personal property, except as otherwise provided by the act. N.J.S.A. 54:32B-6 imposes a compensating use tax on any tangible personal property purchased at retail for use within New Jersey which has not already been nor will be subject to the sales tax. “Use” is defined in N.J.S.A. 54:32B-2(h) as:
The exercise of any right or power over tangible personal property by the purchaser thereof and includes, but is not limited to, the receiving, storage or any keeping or retention for any length of time, withdrawal from storage, any installation, any affixation to real or personal property, or any consumption of real property.
In Diamondhead Corp. v. Taxation Div. Director, 4 N.J. Tax 255 (Tax 1982), this court examined the legislative intent in enactment of the use tax'and observed:
*575 The use tax is imposed on the exercise of a right or power over tangible personal property as opposed to being imposed on a sale of tangible personal property or services as is the sales tax ... It is evident from the designation of the tax as a compensating use tax, as well as from the language used by the Legislature in creating it as a complement to the sales tax, that a primary purpose of the tax is to prevent the State from losing revenue when tangible personal property purchased out-of-state and therefore not subject to New Jersey sales tax is nonetheless used here to the same extent as is property purchased here for which New Jersey sales tax is paid.
[at 257-58]
In Hoffman-La Roche v. Taxation, Div. Director, 5 N.J. Tax 154 (Tax 1983), aff'd on this point, 192 N.J.Super. 552, 471 A.2d 786 (App.Div.1983), this court upheld the Director’s imposition of the use tax on the taxpayer’s purchase of advertising and promotional materials from out-of-state sources which were sent directly from out-of-state vendors to direct madhouses in New Jersey, which, in turn, mailed the materials to out-of-state recipients. The taxpayer, engaged in the manufacture and sale of pharmaceutical products, vitamins and other health care items, selected the professional audiences (such as physicians) to be covered by the mailings from detailed charts supplied by the direct madhouses. This court concluded that plaintiff exercised power and control over the promotional materials and that such exercise constituted the use of such materials in this State within the contemplation of the statute. The court based its conclusion on the taxpayer’s contracts with the New Jersey direct mail houses. Those contracts required taxpayer’s approval of the printed materials before mailing. The court considered this right of approval, exercised in New Jersey, as a “use” of the materials. 5 N.J. Tax at 162.
Plaintiff argues that Hoffman-LaRoche is distinguishable because of the physical presence in New Jersey of the direct mail houses who held and distributed the promotional materials subject to the taxpayer’s exercise of some power and control over the materials while they were still in New Jersey. Plaintiff’s situation, the argument continues, is different because the catalogs in question here were mailed directly from the out-of-state printers to the New Jersey addressees and once the catalogs were placed in the hands of the United States Postal Service following the completion of the production process, *576 plaintiff lost its ability to exercise any right or control over the catalogs. Hoffman LaRoche is indeed distinguishable on its facts in that the taxpayer, through its contracts with direct mailing houses, exercised power and control in New Jersey over the distribution of the promotional materials.
Plaintiffs argument, however, stresses physical location of the property (and in-state control over the property) sought to be taxed at the expense of the broad economic rationale underlying the taxing statute. As the authors of a leading treatise recently observed in their discussion of recent cases in other jurisdictions in which the issue was addressed:
In our view, physical control or possession of the catalogs____are inappropriate measuring rods for determining whether a taxable use of the promotional materials in the State by the vendors took place. Use ought to be judged by economic standards ... The economic utilization of the promotional materials lies in getting them to the prospective customers in the State. The advertiser, which had the articles produced, delivered them to the prospects through its agents—the printer, the Post Office, the common carrier, or the private trucker. Such delivery in the State and such exploitation of the State’s market by the taxpayer or its agents on its behalf ought to be treated as a taxable use of the catalogs or advertising supplements in the market State. II Hellerstein and Hellerstein, State Taxation (1992) H 16.03(3)(a), pp. 16-16 to 16-17. [Emphasis added]
The relationship of economic exploitation of a state market to the exercise of rights and powers over the product for use tax purposes was recognized in K Mart Corp. v. Idaho State Tax Commission, 111 Idaho 719, 727 P.2d 1147 (1986). In that case the advertiser commissioned the out-of-state printing of advertising inserts to be shipped by the printer to newspapers in Idaho designated by the advertiser. Through contracts with the newspapers the advertiser designated the number of inserts to be distributed and the dates of distribution. The primary issue was whether the advertiser was subject to the Idaho use tax. The Idaho Supreme Court, reversing a lower court judgment in the advertiser’s favor, held that the advertiser was subject to the use tax. The relevant statute contained a definition of use virtually identical to that found in N.J.S.A. 54:32B-2(h). The court said:
K Mart argues that only the consumers receiving the inserts “use” them and that K Mart does not. K Mart apparently argues the purpose of the inserts is *577 to provide potential purchasers with news of goods available and on sale. But all advertising is used by advertisers, such as K Mart, for the purpose of making sales and profits. In light of this and the exercise by K Mart, through its contracts, of rights and powers over the inserts incident to their ownership, K Mart uses the inserts within the meaning of the use tax statute ... [727 P.2d at 1149]
The same result was reached in J.C. Penney Co., Inc. v. Olsen, 796 S.W.2d 943 (Tenn.Sup.Ct.1990), wherein the taxpayer commissioned the production of catalogs by printers located in Indiana, South Carolina and Wisconsin for use in conjunction with its mail order business. The taxpayer directed the printers to ship the catalogs directly to Tennessee addresses supplied by the taxpayer. Shipment was accomplished by mail or by common carrier. The transactions were held to constitute a use of the catalogs by the taxpayer within the purview of Tennessee’s use tax. The court said:
... The company caused tangible personal property to be imported into Tennessee from other states in the form of its catalogs. The proof indicates that it surely did use the catalogs for its own benefit although the title and possession of them may have been in the recipients. The Tennessee scheme of taxation is meant to encompass much more than simple title to and possession of tangible persona] property. The concept of use has not been confined to physical manipulation of the property. The taxable privilege of vise extends to the utilization of property for profit-making purposes ... We hold that the trial court ruled correctly that appellant exercised a taxable use with respect to the catalogs printed outside of Tennessee and shipped instate to Tennessee addresses.
[Id at 946; emphasis added]
Courts in other jurisdictions have reached a contrary result. Appellate tribunals in Missouri, New York, South Dakota and Wisconsin have held that, where the taxpayer did not have physical possession of the promotional materials (catalogs, newspaper inserts or similar advertising matter) in the taxing state nor exercised power and control over the materials through contracts with in-state newspapers or direct mail houses there was no “use” of the materials in the taxing state within the purview of the relevant use tax statute. See e.g., May Dept. Stores v. Director of Revenue, 748 S.W.2d 174 (Mo.Sup.Ct.1988); Bennett Brothers, Inc. v. State Tax Commission, 62 A.D.2d 614, 405 N.Y.S.2d 803 (App.Div.1978); Modern Merchandising, Inc. v. Dept. of Revenue, 397 N.W.2d 470 *578 (S.D.Sup.Ct.1986); Wisconsin Dept. of Revenue v. J.C. Penney Co., 108 Wis.2d 662, 323 N.W.2d 168 (App.Ct.1982).
The court concludes that the views expressed in the Heller-stein treatise and in the Idaho and Tennessee decisions cited above are better reasoned and more harmonious with the economic objectives of the New Jersey Sales and Use Tax Act as described in Diamondhead Corp. v. Taxation Div. Director, supra. Acceptance of the narrow view articulated in the Missouri, New York, South Dakota and Wisconsin cases, namely, imposition of the use tax depends upon possession of the material in the taxing state or the exercise, in the taxing state, of power and control over disposition of the material, would permit the catalogs to escape taxation altogether[1] and, at the same time, place printing firms located in New Jersey at a competitive disadvantage, as those firms would be required to collect sales tax on the sale of the catalogs to this New Jersey plaintiff.
Plaintiff claims that application of the New Jersey use tax to the catalogs shipped directly by the printers to New Jersey addresses is an unreasonable burden on interstate commerce in violation of the Commerce Clause, Art. I § 8, cl. 3 of the United States Constitution. Plaintiff argues that the New Jersey use tax assessed against the catalogs at issue is invalid because it is in essence a tax on the mere presence of the catalogs within the State of New Jersey. Plaintiff also urges that there is no nexus to the State of New Jersey because, plaintiff claims, it exercised no control over materials while they were within this State.
Plaintiffs contentions have been definitively rejected by the United States Supreme Court in D.H. Holmes Co. v. McNamara, 486 U.S. 24, 108 S.Ct. 1619, 100 L.Ed.2d 21 (1988). That case involved the imposition of a Louisiana use tax on merchandise catalogs ordered by a Louisiana department store from *579 out-of-state printers, who shipped 82% of the catalogs directly to the taxpayer’s Louisiana customers. The remainder were mailed to customers in Alabama, Mississippi and Florida or to the taxpayer’s flagship store in New Orleans. No sales tax was paid where the catalogs were printed.
The relevant Louisiana statute defined “use” as the exercise of any right or power over tangible personal property incident to ownership.
The Court upheld the constitutionality of the Louisiana use tax in the face of the taxpayer’s challenge on Commerce Clause grounds. The Court found that the use tax satisfied the four-pronged test of Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977). Under Complete Auto Transit a state tax is not an unreasonable burden on interstate commerce in violation of the Commerce Clause if: (1) there is a substantial nexus with the taxing state, (2) the tax is fairly apportioned, (3) the tax does not discriminate against interstate commerce and (4) the tax is fairly related to benefits provided by the state. 430 U.S. at 287, 97 S.Ct. at 1083. The taxpayer in D.H. Holmes made the same arguments that plaintiff makes here, namely, that the Louisiana use tax was a tax on the mere presence of the catalogs within the state and there was no nexus with the taxing state within the purview of Complete Auto. The Supreme Court rejected the presence argument on the basis of the finding of the Louisiana Court of Appeals that dissemination of the catalogs constituted use under Louisiana law. With respect to the nexus argument, the Supreme Court had this to say:
Finally, we believe that Holmes’ distribution of its catalogs reflects a substantial nexus with Louisiana. To begin with, Holmes’ contention that it lacked sufficient control over the catalogs’ distribution in Louisiana to be subject to the use tax verges on the nonsensical. Holmes ordered and paid for the catalogs and supplied the list of customers to whom the catalogs were sent; any catalogs that could not be delivered were returned to it. Holmes admits that it initiated the distribution to improve its sales and name recognition among Louisiana residents. Holmes also has a significant presence in Louisiana, with 13 stores and over $100 million in annual sales in the State ... The distribution of catalogs to approximately 400,000 Louisiana customers was *580 directly aimed at expanding and enhancing its Louisiana business. There is “nexus” aplenty here.
[ 486 U.S. at 32-33, 108 S.Ct. at 1624, 100 L.Ed.2d at 28]
The facts in D.H. Holmes are indistinguishable from the facts in the case before this court. Plaintiff, like the taxpayer in D.H. Holmes, derived most of its revenues from direct mail sales in which catalogs played an indispensable role. There can be no doubt that plaintiff initiated the catalog distribution to improve its sales and name recognition among New Jersey residents. As the Supreme Court observed in D.H. Holmes, there is nexus aplenty here. Plaintiff’s contentions concerning the Commerce Clause are without merit.
In view of the foregoing, this court concludes that plaintiff’s control over distribution of the catalogs in issue constituted the exercise, within New Jersey, of a right and power over the catalogs within the contemplation of N.J.S.A. 54:32B~2(h) and -6.
The court has also considered plaintiff’s contentions pertaining to statutory construction and finds them to be without merit as well.
Defendant’s determination of use tax liability is upheld. Judgment will be entered dismissing the complaint.

 No sales tax was imposed by the states where the printing firms were located.