[This opinion has been published in *Ohio Official Reports* at 87 Ohio St.3d 165.]

TV FANFARE PUBLICATIONS, INC., APPELLANT, *v.* TRACY, TAX COMMR.,
APPELLEE.

[Cite as *TV Fanfare Publications, Inc. v. Tracy*, 1999-Ohio-311.]

*Taxation—Use tax—Production charge for placing advertising material on shopping carts is taxable—Advertising service charge for placing advertising material on shopping carts is not taxable.*

(No. 98-1918—Submitted June 22, 1999—Decided November 10, 1999.)

APPEAL from the Board of Tax Appeals, No. 96-S-530.

———————————

{¶ 1} TV Fanfare Publications, Inc. ("Fanfare"), headquartered in California, organizes various types of advertising promotions. During the audit period January 1, 1988 through June 30, 1991, it operated offices in Columbus and in Cleveland.

{¶ 2} In its ADCART promotions, Fanfare solicited grocery stores, usually chain stores, to allow Fanfare to place placards that promoted an advertiser's business in sign holders on the store's shopping carts. Fanfare called the grocery store an exhibitor and the promoted business an advertiser. Fanfare paid the exhibitor to allow placement of the placards on the shopping carts.

{¶ 3} Fanfare charged the advertiser a production charge for typesetting, layout, paste-up, negative, and plate for preparing the placard. Fanfare charged the advertiser a separate fee to place the placard on the grocery cart. Fanfare installed the signs and maintained them for the term of the promotion.

{¶ 4} In the Market Information Center promotions, Fanfare solicited grocery stores to allow it to place signs on the wall of the store or on a three-panel spinner stand set up in the store. The signs promoted an advertiser's business and

had an area on which the exhibitor-store could place advertisements for its special sales. Fanfare maintained the signs.

{¶ 5} Fanfare paid the grocery store to exhibit these centers. Fanfare collected a production charge from the advertiser for preparing the sign and a separate fee to place the sign in the store for the length of the promotion.

{¶ 6} Fanfare also published two magazines, "Sports & Soaps," which reported information on and dates and times for the viewing of sporting events and soap operas, and "TV Movie News," which reported weekly TV movie listings. These publications, distributed free, contained advertising that paid for production and distribution. Because the information provided in these magazines was time sensitive, Fanfare printed these magazines for specific periods.

{¶ 7} Fanfare again obtained the permission, for a fee, of grocery stores to place these magazines in racks in the stores; Fanfare called these stores distributors. Fanfare then solicited businesses to advertise in the magazines. It charged the advertisers production fees to prepare the advertisements and a fee for placing the advertisements in the magazines. Fanfare then placed the magazines in the stores for free distribution to the store's customers.

{¶ 8} Finally, Fanfare printed advertising on the reverse side of cash-register tapes. Fanfare contracted with grocery stores, also called distributors, to provide them with these tapes, paying the stores to use the tapes in receipting sales for customers. Fanfare obtained advertisers to print their advertising on the reverse side of the tapes. Fanfare charged the advertisers a production fee and a separate fee for placing the advertising on the tapes. These promotions ran until the distributor-store used all the allotted tapes.

{¶ 9} The Tax Commissioner, appellee, assessed use tax against Fanfare as a seller; the commissioner concluded that Fanfare should have collected the tax from the advertisers. He ruled that the advertisers were the consumers of the tangible personal property that Fanfare transferred to the various stores in which

the advertisements were exhibited or from which the advertisements were distributed. The commissioner issued an assessment against Fanfare, including penalty and interest, of $294,432.77. Fanfare appealed this order to the Board of Tax Appeals ("BTA").

{¶ 10} The BTA affirmed the commissioner's order. The BTA agreed with the commissioner that Fanfare's customers, its advertisers, consumed the advertising materials and that Fanfare should have collected use tax from the advertisers on the subject transactions. The BTA rejected Fanfare's argument that the advertisers purchased advertising space, finding that the advertisers purchased advertisements and made taxable use of these materials.

{¶ 11} This cause is now before the court upon an appeal as of right.

_____

*Porter, Wright, Morris & Arthur*, *Ronald W. Gabriel* and *Cynthia Butler Carson*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Duane M. White*, Assistant Attorney General, for appellee.

_____

***Per Curiam.***

### A. Exhibited Advertisements

{¶ 12} As to the placards in the ADCART promotions and the signs in the Market Information Center promotions, Fanfare concedes that it should have collected the tax on the production charges. It claims, however, that the remainder of the charges was for providing advertising space and not taxable under Ohio Adm.Code 5703-9-41. The commissioner contends that this rule requires Fanfare to collect tax on the entire amount charged the advertisers.

{¶ 13} R.C. 5741.02(A) levies an excise tax "on the storage, use, or other consumption in this state of tangible personal property or the benefit realized in the state of any service provided." R.C. 5741.02(C)(2) exempts transactions from the

use tax if the transactions would be exempt from the sales tax. R.C. 5741.01(C) defines "use" as "the exercise of any right or power incidental to the ownership of the thing used." Ohio Adm.Code 5703-9-41 states:

"A person engaged in the field of advertising or in the preparation of advertising matter * * * who produces tangible personal property for transfer to another for a consideration is a vendor with respect to such transactions. * * *

"The production of tangible personal property for the advertiser is a sale irrespective of whether the material used in the production is supplied either directly or indirectly by the advertiser or is obtained by the producer on his own behalf. The production of items such as photographs, photostats, art work, plates, mats, printed material, etc., for another for a consideration is a sale of such items.

"The full amount charged on the sale or production of tangible personal property is subject to the sales tax even though a part of the charge may be billed as 'service charge', 'fee', or 'commission'. Where preliminary art has been prepared, the price or tax base for the finished artwork includes the amount attributable to the preliminary art.

" * * *

"A person in the advertising field who does not sell or produce tangible personal property, but who is engaged solely in rendering service to others as a true agent, is not considered to be a vendor with respect to such services. In determining whether such a person is acting as a true agent, consideration shall be given to the contract between the parties, the conduct of the parties with respect to property involved, and the facts and circumstances of the transaction. A person who, for example, operates under an agreement wherein the agency relationship is specifically set forth and under which advertising is placed in selected media * * * would be considered a true agent. * * *

"Transactions not involving the sale of tangible personal property or the production of tangible personal property are considered to be the performance of a service. Examples of such services are:

" * * *

"The placing of advertising matter in or the purchase of space or time from advertising media;

" * * *

"Where an advertiser is billed for a fee which represents a charge for service not subject to the sales tax, as distinguished from services which are a part of a retail sale or services in the production of tangible personal property, such billing must clearly show the nature of the service rendered."

{¶ 14} The rule subjects "[t]he full amount charged on the sale or production of tangible personal property" to the tax. The rule, however, does not treat a "true agent" as a vendor. A true agent engages "solely in rendering service to others." According to the rule, placing advertising matter in, or purchasing space or time from, advertising media is an example of a service rendered by a true agent. Moreover, when a vendor, under the above-quoted language of the rule, bills an advertiser a fee for service not subject to the tax as distinguished from services that are part of a retail sale or services in the production of tangible personal property, he or she must clearly show the nature of the services rendered in the billing. In Ohio, charges for services are usually not taxed, while charges for transactions in tangible personal property and certain services usually are. *Albright v. Limbach* (1988), 37 Ohio St.3d 275, 525 N.E.2d 801; *Emery Industries, Inc. v. Limbach* (1989), 43 Ohio St.3d 134, 539 N.E.2d 608.

{¶ 15} We interpret this rule to require a person engaged in the field of advertising to collect the tax on advertising material he or she produces and transfers, but to relieve him or her from collecting the tax on nontaxable services. Under the rule, the transfer of produced tangible personal property is a taxable sale

unless otherwise excepted. Moreover, the full amount charged on the sale of produced tangible personal property is the price to be taxed. But an advertising company that places the produced matter into advertising media need not collect the tax for this service. The advertising company avoids the obligation to collect the tax on this latter service if it separately charges for the service. It, nevertheless, must collect tax for the produced property.

{¶ 16} In this case, Fanfare produced the advertising material and separately charged a fee for this production. Fanfare, as it concedes, should have collected the tax on this production charge. Fanfare, however, did not have to collect the tax on the separately charged fee for placing the advertising material in the advertising media of the sign holder on the shopping cart or the signboard of the Market Information Center. The advertisers paid Fanfare one amount for the produced ad and a separate amount for the service of placing the advertisement on the shopping cart or on the spinner. Thus, the production charge is taxable, and the advertising service charge is not.

B. Distributed Advertisements

{¶ 17} Next, as to the magazines and register tapes, Fanfare argues that the advertisers were not consumers because they did not exercise sufficient rights or powers incidental to the ownership of these items. The commissioner replies that the advertisers exercised such sufficient rights or powers because they selected the content of the advertisements and the location where the advertisements were to be distributed.

{¶ 18} In *Drackett Products Co. v. Limbach* (1988), 38 Ohio St.3d 204, 527 N.E.2d 860, we rejected an argument similar to that which Fanfare presents here. In *Drackett*, Drackett Products Company ("Drackett"), in concert with other advertisers, paid several companies to produce advertising supplements for distribution in newspapers selected by Drackett. We found that Drackett, "along with the other advertisers, purchased the advertising supplements from the out-of-

state publishing companies for distribution to the newspapers' customers when [Drackett] and the other advertisers paid the consideration to publish and distribute the supplements." *Id*. at 206, 527 N.E.2d at 863.  We held that Drackett exercised sufficient rights or powers incidental to ownership to subject its purchase of a portion of the supplement to the tax:

"Appellant selected the content of its ad, the newspaper in which it was placed, and the date on which the ad was delivered.  * * * Thus, a use of tangible personal property occurs, under R.C. 5741.02(A) and 5741.01(C), when several advertisers, in concert, pay the cost for producing and distributing a publication that advertises their products." *Id*.

{¶ 19} *Drackett* controls here.  The advertisers purchased the magazines and register tapes when they paid to have their advertisements printed in the magazine and on the register tape available for distribution to the patrons of the distributing grocery store.  The advertisers, by choosing to participate in the promotion, selected the content of the advertisements, the store in which the magazine or register tapes were to be placed, and the dates on which the advertisements were to be distributed.  Fanfare would not have organized these promotions if the advertisers had not agreed to these terms and paid Fanfare the charges. Under *Drackett*, the transactions in which the magazines and register tapes were distributed to patrons of the grocery stores were taxable, and Fanfare should have collected the use tax.

{¶ 20} Nevertheless, this ruling applies only until July 18, 1990, when Am.S.B. No. 303 became effective.  This Act amended the definition of "seller," contained in R.C. 5741.01(E), to mean:

"[T]he person from whom a purchase is made, and includes every person engaged in this state or elsewhere in the business of selling tangible personal property or providing a service for storage, use, or other consumption or benefit in this state  * * *.  *'Seller' does not include any person to the extent the person*

*provides a communications medium, such as, but not limited to, newspapers, magazines, radio, television, or cable television, by means of which sellers solicit purchases of their goods or services*." (Emphasis supplied.) 143 Ohio Laws, Part I, 1603.

**{¶ 21}** Consequently, persons providing communications media are not sellers. Fanfare provides communications media by publishing these magazines and by printing advertising on the reverse side of cash-register tapes. Thus, on July 18, 1990, Fanfare was no longer a seller as to these items, and it did not have to collect the use tax on transactions occurring on and after such date.

**{¶ 22}** Accordingly, we hold that the BTA's decision is unlawful in part. We affirm that portion of the decision that taxed production charges for the ADCART and Market Information Center transactions and reverse that portion that taxed the charges for placing the produced advertisements on the shopping carts and on the information centers. Furthermore, we affirm that portion of the BTA's decision that taxed amounts collected from the advertisers for advertising in the magazines and on cash-register tapes until July 18, 1990. We reverse that portion of the BTA's decision that taxed such transactions on and after July 18, 1990.

*Decision affirmed in part,*
*reversed in part*
*and cause remanded.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____