782 P.2d 32

In the Matter of the Appeal of RAILBOX COMPANY, a Delaware Corporation, From the Determination of the State Tax Commission of Property Tax Liability for the Tax Year 1982.

IDAHO STATE TAX COMMISSION, Appellant/Cross–Respondent,

v.

RAILBOX COMPANY, a Delaware corporation, Respondent/Cross–Appellant.

No. 17087.

Supreme Court of Idaho.

Aug. 28, 1989.

Rehearing Denied Nov. 30, 1989.

Jim Jones, Atty. Gen., Theodore V. Spangler, Deputy Atty. Gen., Boise, for appellant/cross-respondent. Theodore Spangler, argued.

Marcus, Merrick & Montgomery, Boise, for respondent/cross-appellant. Barry L. Marcus, argued.

BAKES, Chief Justice.

This appeal relates solely to the taxation of railroad boxcars which during the calendar year 1981 were stored on a local railroad in Lewis County, Idaho. The Idaho Tax Commission appraised the property owned by Railbox for ad valorem tax purposes. That appraisal-assessment was appealed by Railbox to the Board of Tax Appeals. From that decision in favor of

Railbox the Tax Commission appealed to the district court. Following de novo review the district court affirmed the Board of Tax Appeals. The sole question presented is whether the Tax Commission erred in refusing to apply the formula of its own property tax regulation 804.

We note at the outset that the Tax Commission has submitted no authority for the proposition that it may disregard its own regulation. Further, we see no dispute that if property tax regulation 804 is applied to the instant situation, Railbox must prevail.

I.C. § 63–804, as in effect at the time in question, provides:

It shall be the duty of the state tax commission to ascertain and determine the assessed value of all property in the state owned by each company described in § 63–802, Idaho Code. *The state tax commission is authorized and directed to prescribe by regulation the method of determining the proportionate share of such companies, or number of cars of such companies, taxable in this state.* In making such determination, the state tax Commission may use and consider any of the following factors or criteria: (1) an actual count of cars in this state; (2) the ratio between the mileage traveled by taxpayers' cars in this state as compared with the mileage traveled by taxpayers' cars everywhere; (3) such other factors or criteria as the State Tax Commission may deem appropriate. (Emphasis added.)

Pursuant to that statutory authority, the Tax Commission adopted Regulation 804.[1]

1. ART. 804.....
SPECIAL RULE
Any car company having 1,000 or less miles of total wheelage, and/or a car located within the state 15 days or less, (in case of repairs, idle products, storage use or otherwise), during the prior calendar year ending December 31, may be considered as not being sufficient to economically justify the assessment and collection of the property tax effective January 1 of the current year. However, this rule may be exercised *only* by the Tax Commission and in no case shall be reason for not filing the required annual reports with the Tax Commission.
Car companies having 1,001 or more miles of total wheelage and/or a car located within the state 16 days or more shall be considered as having sufficient property to justify the cost of assessment and collection of the tax.
ALLOCATION OF NUMBER OF CARS (VALUE) TO THE STATE
Based upon available data and statistics, the commission will develop the quantity of cars assignable to the State of Idaho on the basis of the "average" number of cars within its boundaries for the 12–month period prior to the assessment date rather than attempting to ascertain the number of cars actually in the state on the assessment date.
SITUS COUNT METHOD/APPROACH
Consideration will be given to a car quantity which is divided into two counts, one titled "standing count" and the other "running count." The standing count utilizes the daily yard checks made by railroad companies as of 7:00 A.M. each work day. This count includes all cars on industrial spurs, side tracks, yard tracks and storage tracks. It does not include cars that are made up in consists of trains. A sampling of approximately 26 staggered days across the calendar will be used. The total count is aver-

aged and assumed to be equivalent to the average annual count of standing cars in the state. The running count is intended to be the average number of cars in the state necessary to generate the car miles that are reported traveled in the state. From railroad company data the average speed of a train in through-mainline service is estimated. Currently 400 miles per car per day is applicable....
PRO–RATE/WHEELAGE METHOD
Another approach to developing car quantity is allocation by pro-rate or wheelage method.
Several sources of data and computable steps are required to produce a reliable estimate of the number of cars allocable to Idaho.
One such type of data required is the total miles within the United States traveled by all cars owned or leased by the car company for the previous year....
Another required statistic is the total car miles of all owned or leased cars that traveled within the State of Idaho and is to be furnished by the car company. The various railroad companies are also required by the Tax Commission to compile car mileage for each car company and submit to the Commission. If there is a difference between the two sources of data, the two must be reconciled.
With the above information in hand, i.e., total car miles traveled within the prior year by car company and total car miles traveled within the State of Idaho, an average percentage of the company fleet of cars within Idaho during the year is obtainable by dividing the total miles traveled by all cars within the U.S. into the total miles traveled within Idaho. The percentage thus developed is applied to the "in service" owned and leased cars of the company. The result is an average of the number of cars within the fleet allocable to Idaho by the pro-rate or wheelage method.

■ The formula prescribed by Regulation 804 includes all of such property within the taxing jurisdiction including those boxcars on storage tracks. Contrary to the assertions of the Tax Commission, that regulation does not create any exemption. Rather, as aptly stated by the district court in its Memorandum Decision, this regulation formulates

> the procedure under which the property of railroad car companies subject to taxation in Idaho will be determined. It recognizes the obvious difficulties of attempting to determine and assess such property on a given date; it recognized the transitory nature of rolling stock; it recognizes the multi-state impact of taxation; and it therefore specifically contemplates the use of estimates, averages and formulas.

As noted by our decision in *Xerox v. Ada County Assessor*, 101 Idaho 138, 609 P.2d 1129 (1980), the classification of property is permitted for the purpose of applying a different method of valuation. As stated in the decision of the district court:

> This is not a contest between a statute taxing property and the regulation exempting property, as contended by the Tax Commission. Rather, it is a case of a statute taxing property (I.C. § 63–101), another statute defining the property to be taxed and directing the Tax Commission to adopt regulations implementing the definition (I.C. § 63–804), and the regulation adopted thereunder. (Regulation 804). . . .
>
> The regulation does not interpret the statute, and it is not in conflict with either the statutes or the constitution. . . .

The statute, I.C. § 63–804 clearly authorizes and directs the Tax Commission to adopt a regulation for the determination of the market value of such property. The Tax Commission has so adopted its regulation. We find nothing unconstitutional or invalid in such regulation.

■ Since the statute authorizes the Tax Commission to adopt regulations governing this aspect of taxation, it of course is free to abolish, modify or change its regulation if it perceives that the application of that regulation results in inequality or inequity. We note that there is no assertion by any like taxpayer that the regulation results in over taxation, inequity or unfairness in the taxation of any other like company.

■ We agree with the observation of the district court that the Tax Commission cannot be permitted to ignore its own regulation in an attempt to search out special circumstances rendering the regulation meaningless.

■ On its cross-appeal, Railbox contends that the Commission incorrectly determined the value of the railroad cars and that Railbox is hence entitled to a further reduction in the value of its property. We disagree. The value placed on property by assessors for ad valorem purposes, is presumed to be correct. The burden is upon the taxpayer to show by clear and convincing evidence that he is entitled to relief. *Merris v. Ada County*, 100 Idaho 59, 593 P.2d 394 (1979). Here the district court concluded that Railbox had failed to overcome the presumption that the Tax Commission's valuation was correct. We agree. The evidence introduced by Railbox did not meet the standard of clear and convincing evidence that the valuation of the rail cars was erroneous. Hence, we affirm the decision of the district court determining the assessed value of the Railbox property.

■ Railbox next contends that it is entitled to interest on that amount of tax paid by it and ordered refunded by the decision of the district court. It is contended that interest on that amount should be comput-

CORRELATION OF METHODS

The arithmetic or weighted average of the situs count and pro-rate methods will be utilized to estimate the number of cars allocable to the state of Idaho. The average number of cars *thus developed will be converted to estimated* market value for assessment purposes through multiplying the average estimated value per car. Example:

| | |
|---|---|
| Average value of car | $ 10,000 |
| Average No. of Cars Allocable to Idaho | 10 |
| Estimated Market Value for Assessment Purposes | $100,000 |

ed from the date when the taxes were overpaid, *i.e.*, during the time that the state wrongfully retained the use of Railbox's money.

In *County of Ada v. Red Steer Drive-Ins of Nevada, Inc.*, 101 Idaho 94, 609 P.2d 161 (1980), the Court allowed interest on overpaid ad valorem taxes, reversing its prior decision in the case of *American Oil Co. v. Neill*, 90 Idaho 333, 414 P.2d 206 (1966). The *Red Steer* Court wrote:

> We turn now to the second issue raised in this action—whether Red Steer is entitled to interest payments on the amount of tax which it overpaid....
>
> ... the payment of interest on the amount due is necessary to fully compensate Red Steer since the loss of the use of the money from the time of its overassessment until its recovery represents additional costs to it. We therefore reverse the judgment of the district court only as it pertains to the denial of interest and remand this portion to the district court with instructions to enter judgment in favor of Red Steer, entitling it to interest on the judgment....

101 Idaho at 100, 609 P.2d 161. Our decision in the *Red Steer* case is consistent with action of the legislature in the income tax field which allows interest on overpayments. *See* I.C. § 63–3073.

Accordingly, we affirm the decision of the district court determining the assessed value of the Railbox property. We reverse that part of the district court's decision disallowing interest to Railbox on the amount of ad valorem taxes ordered refunded by the decision of the district court. *County of Ada v. Red Steer Drive-Ins of Nevada, Inc.*, 101 Idaho 94, 609 P.2d 161 (1980). Costs to respondent/cross-appellant; no attorney fees allowed.

JOHNSON and SHEPARD,* JJ. concur.

HUNTLEY, Justice dissenting (dissent written prior to his resignation on August 7, 1989).

I must respectfully dissent from the opinion of the majority for several reasons.

The majority opinion errs, I think, when it asserts the regulation was designed to cover this type of situation when clearly the plain reading of the regulation establishes that it does not. If we are to hold the administrative agencies of Idaho to a standard that whenever they promulgate regulations in a given area, that those regulations will be deemed by this Court to encompass areas not contemplated or addressed, then we are putting the agencies under a tremendous burden because they cannot be expected to have either the expertise or the foresight to anticipate every conceivable fact situation when they are designing a regulation.

Secondly, even if the regulation were to have covered this situation, it would be unconstitutional. The majority asserts that the Tax Commission is bound by its own regulations, and thus it is estopped to assert the constitutional issues, but I submit that is a very narrowly focused view of the issue in this case. If the Tax Commission's regulations operate to violate the Constitution by being contrary to the constitutional requirements that the full value of property be taxed within the state, and that all property be taxed uniformly, then this Court has a duty to declare the regulation unconstitutional.

Just as the Tax Commissioner himself cannot assess taxes unequally and disproportionately, likewise, the Commission cannot accomplish unconstitutional taxation simply by promulgating a regulation.

The effect of the majority opinion is to require that the other taxpayers of Lewis County pick up and bear the tax burden that would properly be assessed against Railbox. To add insult to injury, the taxpayers of Lewis County are going to have to be specially assessed or have their taxes increased in order to raise revenue for the refund.

I would hope that a cogent petition for rehearing would be presented to this Court to provide it an opportunity to give this matter further consideration.

BISTLINE, J., concurs.

* SHEPARD, J. sat and fully concurred prior to his untimely death.

BISTLINE, Justice, dissenting.

Having joined the opinion of Huntley, J., I write only in respect to an aspect of the case which apparently gives concern to only myself. In sum, I find it entirely unreasonable for the Court to apply against the Tax Commission the particular regulation, 804, when it does not fit the special extra-ordinary circumstances here present. Moreover, I.C. § 63–804 was obviously aimed at allowing the Tax Commission to devise a formula which gives proper consideration to the expectancy that railroad cars are in and out of Idaho just as they are in and out of our neighboring and also non-adjacent states.

In the instant case we are discussing a fleet of boxcars which are useable, but are not used (to borrow from the language of public utility rate making cases). Otherwise put, the cars are useable rolling stock, but which were kept out of traffic and stored on out-of-the-way tracks in northern Idaho near the town of Craigmont. On travels for our terms of court in northern Idaho, I have viewed those cars.

Idaho Code § 63–804 is clearly aimed at allowing the Tax Commission to set up a proportionate share taxation program compatible with that of other states in much the same way, so I understand, that real estate taxes on railroad rights of way are proportionately collected. The instant circumstances not being in the Tax Commission's contemplation when it promulgated its Regulation 804, the Tax Commission should be at liberty to fairly tax the respondent's box cars for the full time during which they are standing idle in one or more of our Idaho counties.

In sum, I disagree "with the observation of the district court that the Tax Commission cannot be permitted to ignore its own regulation in an attempt to search out special circumstances." Moreover, I do not see at all that the regulation has been rendered meaningless—rather it has been deemed inapplicable to the patently observable circumstances. The requirements of taxation law generally are that tax burdens be justly deposited on all taxable personal property within the state. The cars in question are such personal property. Before I can be persuaded otherwise there needs be present an evidentiary showing which, if in the record I am unable to find, informs us that the cars in question have been *fully* taxed, by which I mean that the neighboring and other non-adjacent states have collected each some proportionate share of personal property taxes for these cars albeit they were constantly lying idle in Idaho during the particular tax years.