788 P.2d 180

In the Matter of the Appeal of RAILBOX COMPANY, a Delaware Corporation, from the Determination of the State Tax Commission Property Tax Liability for the Tax Year 1982.

IDAHO STATE TAX COMMISSION, Appellant/Cross–Respondent,

v.

RAILBOX COMPANY, a Delaware corporation, Respondent/Cross–Appellant.

No. 17087.

Supreme Court of Idaho.

Nov. 30, 1989.

ORDER DENYING PETITION FOR REHEARING

The Appellant having filed a PETITION FOR REHEARING on September 18, 1989, and supporting BRIEF on October 16, 1989, of the Court's Opinion entered August 28, 1989, 116 Idaho 909, 782 P.2d 32; therefore, after due consideration,

IT IS HEREBY ORDERED that Appellant's PETITION FOR REHEARING be, and hereby is, DENIED and the dissent on Denial of the Petition for Rehearing by BISTLINE, J., be, and hereby is, RELEASED.

BISTLINE, Justice, dissenting on Denial of Petition for Rehearing.

I.

The *Appeal of Railbox Co.*, 116 Idaho 909, 782 P.2d 32 (1989) majority opinion stated that *"the Tax Commission has submitted no authority for the proposition that it may disregard its own regulation."* 116 Idaho 909, 910, 782 P.2d 32, 33 (1989) (emphasis added). The answer to that statement is readily provided by the Tax Commission's brief filed in support of its petition which correctly reminds its readers

that *K Mart Corp. v. Idaho State Tax Com'n,* 111 Idaho 719, 727 P.2d 1147 (1986), was relied upon in the *first* brief which the Tax Commission filed in this Court, as is readily found at pages 11, 26, 27, and 33 of the brief. In particular, it is not only cited, but is specifically quoted in Part IV, 3A, of that brief which part begins at page 24, and is captioned: "THE REGULATION IS NOT SUFFICIENT AUTHORITY TO JUSTIFY THE DISTRICT COURT'S CONCLUSIONS" and continues at page 25–28:

The District Court's valuation rests only on the proposition that the Commission is bound by its regulation to include the Lewis County cars in the 'standing count' factor of the formula. Railbox made no effort at the hearing to show that the Tax Commission's count of cars was wrong as a matter of fact. The District Court made no factual finding that the Tax Commission's count of cars was in error. In fact, the District Court expressly found that the formula 'operates to reduce by almost one-half the number of boxcars allocated to Idaho for the year over the numbers of cars actually within the state during the year.' R. 22.

The fallacy with the District Court's conclusion is that it assumes that the Tax Commission can, by regulation, somehow exempt property from tax or *can discriminatorily value property contrary to constitutional and legislative authority.* Such a result is clearly beyond the power of the Tax Commission to accomplish, by regulation or otherwise.

As applied by the District Court to Railbox, the regulation would conflict with both constitutional standards and taxing statutes of the state. The conflict is not with the enabling statute, Idaho Code § 63–804, but with the statutory and constitutional requirement for clear legislative grant of an exemption. The drafters of the Idaho Constitution were clear that the legislature, and only the legislature, have the power to exempt property. *Simmons v. State Tax Commission,* 111 Idaho 343, 723 P.2d 887 (1986). The District Court's Memoran-

dum Decision attempts to finesse this argument by limiting the analysis to conflict between the enabling statute and the regulation. This is an improper analysis. *A regulation conflicting with any statute must fall. K Mart Corp. v. Idaho State Tax Commission, 111 Idaho 719,* 727 P.2d 1147 (1986), *appeal dismissed* 480 U.S. 942, 107 S.Ct. 1597, 94 L.Ed.2d 784 (1987). Certainly, a result which violates constitutional requirements can not be justified by reliance on an agency's regulation.

If the results of a regulation do not comply with the statutes or constitution, the Commission is not mandated to follow the regulation. *While it is unquestionable that the Commission must follow its regulations, when the results are constitutionally and statutorily valid, the Commission can modify invalid results reached by its otherwise valid regulation.*

In *Market Street Ry. v. California State Board of Equalization,* 137 Cal. App. 2d 87, 290 P.2d 20 (1955), a railway company failed to pay sales taxes to the state of California. In doing so, the company relied upon a specific administrative ruling to the effect that the sales were exempt. After the sales in question were made, the state taxing authority reversed its position and sought to collect the taxes. The company asserted the state was estopped, by reason of its own administrative ruling, from asserting the tax liability. The California Court rejected the taxpayer's contention:

> The state board cites many cases from this and other jurisdictions to the effect that an estoppel based on reliance on an erroneous construction of the statute by an administrative ruling will not lie against the government, particularly in a tax matter. As a general proposition, this is sound law. Obviously, a tax administrator should not be permitted by an erroneous ruling to exempt a tax payer from the obligation to pay taxes.

[*Market Street Ry. v. California State Board of Equalization,*] 290 P.2d at 28 .... [The *Market Street* court also

conceded that] '*An administrative regulation which is in conflict with the statute is invalid and the government is not bound thereby.*' (Emphasis added.)

The Idaho Supreme Court has quoted this language with apparent approval in *Ware v. State Tax Commission,* 98 Idaho 477, 483, 567 P.2d 423, 429 (1977). The Court's decision then indicates that ordinary rules of estoppel apply.

The Idaho Court subsequently followed this rationale in *K Mart Corporation v. Idaho State Tax Commission,* 111 Idaho 719, 727 P.2d 1147 (1986), *appeal dismissed* 480 U.S. 942, 107 S.Ct. 1597, 94 L.Ed.2d 784 (1987):

> If a taxpayer owes tax under a statutory scheme that is constitutional, assessment of the tax pursuant to a regulation that does not comport with the constitution or with the statutory scheme does not defeat the taxpayer's statutory liability. The tax statutes are fully enforceable even if no tax regulation interpreting them exists. Statutes control interpretive regulations. To the extent a regulation is unconstitutional, it is inconsistent with the constitutional statute it purports to interpret and is, therefore, of no effect to the extent of such inconsistency.

*In K Mart, the Idaho Supreme Court struck down a regulation which the taxpayer argued was valid. If the court had not voided the regulation, K Mart would have been exempt from taxation.*

(Some emphasis in original, emphasis added.)

Also in Part IV, B, the Tax Commission's initial brief thoroughly explained why the Commission cannot constitutionally allow itself to be bound by a regulation, even one promulgated by it, which contravenes statutory and constitutional provisions:

> The essence of the District Court's ruling is that the Tax Commission promulgated the formula by regulation, the taxpayer relied on it, so now the Commission is bound by the regulation to accept the value reached by including the Lewis County cars in the formula. However,

the Commission is not bound to apply the formula in the manner Railbox seeks.

First, regulations like statutes, must be construed to reach constitutional results. *Bingham Memorial Hospital v. Idaho Dept. of Health and Welfare*, 112 Idaho 1094, 739 P.2d 393 (1987); *Higginson v. Westergard*, 100 Idaho 687, 604 P.2d 51 (1979).

Second, regulations are intended to express rules of general application. Idaho Code § 67–5201(7). Regulations cannot be expected to fully anticipate every set of facts with which an agency may be confronted.

In 1982, the Idaho Tax Commission assessed the property of 184 railroad car companies like Railbox. See, Thirty-eighth Annual Report of the Idaho State Tax Commission (1982) pp. 77–83. The *formula provided by Regulation 804 is intended to be generally applicable to companies with fleets of railcars in ACTIVE service.* Railbox's witness at the BTA hearing admitted it is the company's goal to have as many cars running as possible. T. 16. So long as the formula is applied to fleets of railcars in active use, the formula reaches a reasonable result. But the facts of an individual taxpayer's operations may not lend themselves to the assumptions inherent in a formula of general applicability. Long ago, the U.S. Supreme Court, in a similar case, observed:

> The problem of apportionment is a difficult one. *It is impossible to formulate a rule generally applicable.* Controlling conditions vary greatly from time to time. Allocations to be sufficiently accurate for practical purposes must be arrived at by the exercise of sound judgment based on facts that fairly reflect the relation between value of the system as a whole and value of the part within a state. *Rowley v. Chicago & N.S. Ry. Co., supra,* 293 U.S. 102, 109–110, 55 S.Ct. 55 [58–59], 79 L.Ed. 222. (Emphasis added.)

*Great Northern Ry. Co. v. Weeks,* 297 U.S. 135, 56 S.Ct. 426, 80 L.Ed. 532 (1936).

In cases relating to property valuation for tax purposes, this Court has recently observed that usual appraisal methods may not be applicable to unusual facts:

> We have previously noted that assessments pursuant to an approved method of appraisal may still be arbitrary, and capricious and unreflective of market value in the actual and functional use of the property.

*Fairway Development Co. v. Bannock County,* [113] Idaho [933], 750 P.2d 954 (1988). *See also, Merris v. Ada County,* 100 Idaho 59, 593 P.2d 394 (1979).

Railbox's witness at the BTA hearing admitted that storing more than 300 cars in Idaho was an unusual occurrence. T. 34.

It is the Tax Commission's duty to ensure that *all* property is assessed uniformly at its full market value. Idaho Code § 63–515 and *Idaho State Tax Commission v. Staker,* 104 Idaho 734, 663 P.2d 270 (1982). The Commission's assessment of Railbox fulfills that duty.

Even though the regulation does not specify any other allocation formula, it does not need to. The statute provides adequate authority to allocate the cars by actual count, as was done here. The statute states:

> The state tax commission is authorized and directed to prescribe by regulation the method of determining the proportionate share of such companies, or number of cars of such companies, taxable in this state. In making such determination, the state tax commission may use and consider any of the following factors or criteria: (1) *an actual count of cars in this state;* (2) the ratio between the mileage traveled by taxpayer's cars in this state as compared with the mileage traveled by taxpayers' cars everywhere; (3) *such other factors or criteria as the state tax commission may deem appropriate.* (Emphasis added.)

1980 Idaho Sess. Laws, Ch. 350 § 24 p. 908. *This statute expressly authorized the Tax Commission to count Railbox's cars in the manner it did.* **As with the result in K Mart v. Idaho State Tax**

*Commission,* 111 Idaho 719, 727 P.2d 1147 (1986), *appeal dismissed* 480 U.S. 942, 107 S.Ct. 1597, 94 L.Ed.2d 784 (1987), silence in the regulation only means the Commission must rely on the authority of the statute.

Finally, it is clear from a close examination that *the formula was never intended to apply to cases such as this where a large number of Railbox's cars were stored in Idaho.* The formula is clearly designed to estimate the part of a fleet of railcars *actively in use* which should be attributed to Idaho. That the inclusion of a large number of stored railcars results in mathematical distortion, is obvious upon close examination of the formula.

The misallocation comes about because of an assumption in the regulation which is *not applicable to the case where a car company stores its cars in a specific location for an entire calendar year.*

Appellant's Brief, 30–33 (Some emphasis supplied in the Tax Commission's brief itself. Other emphasis has been provided for better enlightenment as to the mistaken assertion contained in the majority opinion stating that the Tax Commission submitted *no* authority, which is blatantly unfair to counsel for the Commission, and grossly in error).

The Court in *K Mart* was admittedly not unanimous. The negatives were those of Justice Shepard and Justice Bakes. Chief Justice Bakes is today's author of an opinion which makes absolutely no mention of *K Mart,* which is for apparently obvious reasons: *K Mart* is controlling precedential case law until overruled; no attempt has been made to justify not citing it, or to explain it out of existence. Simply put, today's opinion for the Court is a travesty and an injustice. It is impossible to fathom a scintilla of reason for the Court's strange and highly unusual actions.

It cannot be that the author of today's opinion for the Court is not well aware of *K Mart,* an appeal in which he not only participated, but found time to write his differing views:

The majority accurately states the issue, and for purposes of this dissent, it will be restated. In this case we determine whether an advertiser, which has its advertising supplements printed out of state and which then pays the newspaper to insert and deliver the supplements with the newspaper, is subject to payment of a use tax on the cost of the purchase of the supplements from the out-of-state printer. The controlling statutory provision is contained in I.C. § 63–3622(d), which reads:

> **63–3622. Exemptions.**—There are exempted from the taxes imposed by this act the following:
>
> . . . .
>
> (d) Receipts from the sale, storage, use or other consumption in this state of tangible personal property which will enter into and become an ingredient or component part of tangible personal property manufactured, processed, mined, produced or fabricated for ultimate sale at retail within or without this state, and tangible personal property primarily and directly used or consumed in or during such manufacturing, processing, mining, farming, or fabricating operations by a business or segment of a business which is primarily devoted to such operation or operations, provided that the use or consumption of such tangible personal property is necessary or essential to the performance of such operation.

*K Mart,* 111 Idaho at 723, 727 P.2d 1147.

In the paragraph immediately preceding the one above set out, Justice Bakes also cited to the very same statutory authority as did the majority opinion:

> The majority opinion found, as did the trial court, that the K–Mart inserts fell within the use tax provision of I.C. § 63–3621, and within the use definition in I.C. § 63–3615. The statute requires that a party fall within the use tax before a court can consider the exemptions contained in I.C. § 63–3622.

*Id.* at 723, 727 P.2d 1147. *Justice Bakes made no mention whatever of any Tax Commission regulations.* Justice Huntley

in authoring *the majority opinion did do so:*

> The district court also held K Mart not liable for use tax on a second ground. The court said IDAPA 35.02.13, 15–A [footnote omitted] (now IDAPA 35.02.13, 15(c)) violates the equal protection clause of the fourteenth amendment to the federal constitution. This administrative regulation declares sales of inserts from printers to advertisers as taxable, while exempting inserts printed by the newspaper which ultimately distributes the inserts. Concluding that this classification violated equal protection, the district court held K Mart not liable for use taxes.

*Id.* at 721–22, 727 P.2d 1147. Justice Huntley did not disagree with the trial court's declaration that the regulations classification violated equal protection, but he found that to be of no moment:

> While the sales tax regulations may make questionable distinctions regarding the tax consequences to advertisers using newspapers rather than third party printers, the statutory scheme makes no such distinction. Under that scheme, K Mart owes use tax on the inserts. I.C. §§ 63–3621, 63–3615(b). *If a taxpayer owes tax under a statutory scheme that is constitutional, assessment of the tax pursuant to a regulation that does not comport with the constitution or with the statutory scheme does not defeat the taxpayer's statutory liability.* The tax statutes are fully enforceable even if no tax regulation interpreting them exists. *Statutes control interpretive regulations. To the extent a regulation is unconstitutional, it is inconsistent with the constitutional statute it purports to interpret and is, therefore, of no effect to the extent of such inconsistency. C.f. Application of State Board of Medical Examiners,* 201 Okla. 365, 206 P.2d 211, 214–15 (1949) (a regulation is ineffective to the extent it is inconsistent with the statute it purports to inter-

> pret.) ***Even if the tax regulation is unconstitutional, or simply inconsistent with the statute, as it appears to be, K Mart remains liable under the statutory scheme. The constitutional integrity of the applicable statutes has not been attacked.***

*Id.* at 722, 727 P.2d 1147 (emphasis added). That holding [1] is binding case precedent. Justice Bakes mounted no attack on it in *K Mart.* Today in *Railbox,* he has simply ignored it. But worse than that, he carries three justices along with him.

The Tax Commission's brief supporting its petition succinctly assesses the fault of the majority opinion:

> If we are to hold the administrative agencies of Idaho to a standard that whenever they promulgate regulations in a given area, those regulations will be deemed by this Court to encompass areas not contemplated or addressed, then we are putting the agencies under a tremendous burden because they cannot be expected to have the expertise or the foresight to anticipate every conceivable fact situation when they are designing a regulation.

Appellant's Brief in Support of Petition for Rehearing, 2. Following which it fortified its position with an excerpt from a well-written, well-documented, and highly applicable article from the Harvard Law Review:

> Whichever authority is relied upon to invalidate inadequately explained violations, courts should refrain from establishing any absolute rules to govern this area. Instead, courts should articulate the analysis of the interests which properly must be considered in each case. A court should first determine whether the violation possibly affected the outcome of the agency's action, so that the party may have been treated differently from those in whose case the regulation is applied. If the outcome was likely to have been affected, the court should ex-

---

1. West Publishing Company experienced no trouble in ascertaining the primary holding in *K–Mart:* "If a taxpayer owed tax under a statutory scheme that is constitutional, assessment of the tax pursuant to regulation that does not comport with the constitutional scheme does not defeat the taxpayer's statutory liability." *K Mart,* 111 Idaho at 719, 727 P.2d 1147.

amine whether the violation of the regulation is in line with a general agency practice of violating the regulation; if it is, the interest in consistent treatment would not be served by invalidating the violation. Finally, if the violation represents a departure from a general policy of adherence to the regulation, the court must examine whether the party objecting to the violation comes within a class whose interest is rationally promoted by the regulation, or whether the party has standing to litigate the interest of such a class. It is possible for the party to have been denied consistent treatment only if all these conditions exist. Even then, the departure in his case may be justified by his special circumstances. Therefore a court should remand the case to the agency to explain the circumstances or to change the rule to apply in similar circumstances. Only if the agency fails to respond in a manner satisfactory to the court should its action be reversed. A judicious application of this approach would accord just treatment to the parties involved without restricting the agency's flexibility to make desirable policy changes.

*Violations by Agencies of Their Own Regulations,* 87 Harvard Law Review 629 at 655 (1974).

With the opinion for the Court declaring that the Tax Commission submitted *no* authority, which error was called to its attention by the Tax Commission's petition and brief requesting a rehearing, and, with Chief Justice Bakes and Justice Johnson both refusing to allow a rehearing while at the same time not deigning to explain away how it is that they need not respond to the allegation that the majority's opinion is in large part predicated upon the accusation that the Tax Commission furnished the Court with *no* authority, it appears to me that the Court's credibility can not help but be much impugned. Today, the state's judicial department of government has worked a great injustice on an agency of the state's executive department when that agency has not malperformed. Additionally, everyone on the Court has been made well aware of the financial ruin which may be visited on two sparsely populated north Idaho counties who have done nothing wrong. By the scheme of things, it, was not the duty of the county assessors to appraise railroad box cars for assessment purposes. Rather, that duty is by law placed on the Tax Commission. The Tax Commission properly performed its function. If there had been any doubt as to the proper method of appraising and assessing, whether by constitutional statute or by regulation, any such doubt was clearly obviated by this Court's holding in the *K Mart* case.

## II.

Two members of the Court who sat at the oral argument were not available to vote on the Tax Commission's petition for rehearing, one being Justice Shepard by reason of his untimely death, and the other was Justice Huntley by reason of his return to private practice. However, in due time those two vacancies were filled by two new appointees and the Court was restored to its normal complement of five members. The two new members of the Court did not come onto the Court under any expansion of the Court from five to seven members, but rather as replacements for those who are gone. Justice McDevitt replaces Justice Shepard, and Justice Boyle replaces Justice Huntley. Hence, a full Court is now available to consider and vote on the Tax Commission's petition for rehearing.

Nothing contained in the Court's internal rules, as previously drafted and promulgated before the change in membership occurred, covers this situation, to wit, where an opinion has been participated in by five justices, and has been issued, and then a petition for rehearing has been filed, and by fate the Court has been temporarily reduced to only three justices. Two votes are required in order to grant. This would also be true where this Court receives petitions asking that we review a Court of Appeals decision; *three* votes are required to grant review. The Chief Justice, in recognition of these untoward circumstances, held up action on such pending petitions until the Court was back to its full comple-

ment of five members. When that occurred, all five members voted on petitions for review, and it was the consensus of this Court that that was proper. But rehearing petitions did not fare so well. In fact, not well at all. With five members present, and one abstaining from voting, yet not recusing himself, the decision was made "that only those justices who sat and participated in an opinion released by the Court will be entitled to vote on a petition for rehearing." The two new justices were included in the vote thus taken. In a contrary and inconsistent vein, those same Court minutes of September 20, 1989, reflect as a continuation of the entry above that "if only two of the justices (or pro tem justices) who sat in the original case participated in the original opinion remain available to vote, then the petition for rehearing will be submitted to the entire Court, as then constituted, to vote on the petition for rehearing ..." Because there remained available three members of the Court who participated in the original opinion, then under the ruling made by four, which included the two new justices, the two justices recently appointed were effectively disenfranchised from reading the briefs, the opinions, the petition for rehearing and supporting brief, and from voting. Assuming there is a fault in this, it would be attributable to all voting for such an outlandish rule. This is clearly a violation of due process, both procedural and/or substantive, or likely both under the federal and Idaho constitutional due process protections. The Tax Commission was not made aware that the necessary two votes had to be extracted from but three justices.

Idaho Const., art. 5, § 6, mandates that the Supreme Court shall consist of FIVE justices. Historically when a member is absent by reason of illness, absence, or death, the Court has never sat without a pro tem justice, so as to make a complement of five. A substantive right in Supreme Court proceedings in Idaho has been since January 1, 1882, the right to petition the Supreme Court for a rehearing. Rule XXVIII, 1 Idaho 29. In 1882, and before that and until statehood, the territorial Supreme Court was comprised of three federally appointed justices. That number of three was continued upon entering into statehood, and continued until 1919 at which time a constitutional amendment changed the constituency to five justices. Where the Court as a matter of fact and fate dwindled to only three justices, the Tax Commission was deprived of constitutional due process by a procedure which confined three justices to passing on the merits of the petition, with two sitting justices present but not voting, and in fact had voted so as to preclude themselves.

Because of the magnitude of the infringement on the guarantee of due process, by virtue of the fourteenth amendment of the Constitution of the United States, there is the likelihood that this is one of the few civil decisions by a state court where relief may ultimately be obtained in the United States Supreme Court. *Smith v. Dept. of Employment*, 98 Idaho 43, 557 P.2d 637 (1976), reversed 434 U.S. 100, 98 S.Ct. 327, 54 L.Ed.2d 324 (1977).[2]

**2.** The dissenting opinions in the *Smith* case suggest that the Tax Commission's chances of gaining entry to the Supreme Court may be viable, even if doubtful. From the *Smith* case, per Justice Stevens:

Mr. Justice STEVENS, dissenting in part.

*In defining the jurisdiction of this Court to review the final judgments rendered by the highest court of a State, Congress has sharply differentiated between cases in which the state court has rejected a federal claim and those in which the federal claim has been vindicated. In the former category our jurisdiction is mandatory; in the latter, it is discretionary.*

Our jurisdiction in this case is in the discretionary category. The Idaho Supreme Court has ordered the Idaho Department of Employment to pay benefits to an Idaho resident, resting its decision on an interpretation of the Fourteenth Amendment. Since this decision does not create a conflict and does not involve a question of national importance, it is inappropriate to grant certiorari and order full briefing and oral argument.

Even though there was error in the Idaho Supreme Court's use of the Fourteenth Amendment as a basis for providing an Idaho resident with more protection than the Federal Constitution requires, I do not believe that error is a sufficient justification for the exercise of this Court's discretionary jurisdiction. We are much too busy to correct every error that is called to our attention in the *thou-*

**372**

On that premise, I quote from this Court's unanimous opinion in *Rudd v. Rudd,* 105 Idaho 112, 115, 666 P.2d 639, 642 (1983), per Justice Bakes:

> The right to procedural due process guaranteed under both the Idaho and United States Constitutions requires that a person involved in the judicial process be given meaningful notice and a meaningful opportunity to be heard. See *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); *Mays v. District Court,* 34 Idaho 200, 200 P. 115 (1921).

It is regretful that a state agency should be put in such a circumstance by Idaho's highest court.

---

*sands of certiorari petitions that are filed each year.* Whenever we attempt to do so summarily, we court the danger of either committing error ourselves or of confusing rather than clarifying the law. This risk is aggravated when the losing litigant is too poor to hire a lawyer, as is true in this case. Moreover, this Court's random and spasmodic efforts to correct errors summarily may create the unfortunate impression that the Court is more interested in upholding the power of the State than in vindicating individual rights.

For these reasons, although I have no quarrel with the majority's analysis of the merits, I think it would have been wise for the Court to deny certiorari in this case.

From the *Smith* case, per Justice Brennan and joined by Justice Marshall:

> I agree with my Brother STEVENS that there is no basis for granting certiorari in this case. I add only that, for me, the record presents serious problems of mootness that have been addressed by neither party's counsel and, in addition, I question whether the federal issue argued by the State here was properly presented below. In light of these additional problems, our summary reversal may indeed 'create the unfortunate impression that the Court is more interested in upholding the power of the State than in vindicating individual rights.' 98 S.Ct. at 330.

> Nonetheless, if the federal issue is properly before us, I must agree that the Supreme Court of Idaho committed error. See *Ohio Bureau of Employment Services v. Hodory,* 431 U.S. 471, 97 S.Ct. 1898, 52 L.Ed.2d 513 (1977). This does not mean, of course, that respondent must lose her unemployment benefits. As my Brother BLACKMUN notes, the Supreme Court of Idaho on remand may well want to consider whether the purpose of the Idaho Legislature in passing the 'night school' provision of Idaho Code § 72–1312(a) (1973) would not be better served by construing that phrase to include early morning classes, which like night classes are apparently intended by their provider, Boise State University, to allow person both to work (or seek work) and to go to school. If this construction is not adopted, the court may want to consider whether the Idaho Constitution invalidates § 72–1312(a). See generally Brennan, State Constitutions and the Protection of Individuals Rights, 90 Harv.L.Rev. 489 (1977).

*Smith,* 434 U.S. at 102, 98 S.Ct. at 329.